————o————

WILLIAM POTTER, et al., Plaintiffs in Error, vs. JONATHAN HERRING, Defendant in Error.

1. *Mortgage—Equity of redemption—Purchase of, by mortgagee.*—A. and B. jointly bought an equity of redemption in a tract of wild land, upon which, A. had a mortgage or a deed of trust. Subsequently A. foreclosed his mortgage and requested B. to join him in the sale under the trust, but B. refused. A. bought at a price greatly below the sum secured to him by the deed of trust. Years after A. died, his administrator sold the land to a stranger who put im-

provements on it worth $5,000. B. died also, and his heirs or representatives asked to be considered as tenants in common with these purchasers, on payment of one-half of A.'s bid, not one-half of his debt; *held*, that there was no equity in the bill, without an offer to pay one-half of A.'s debt; *held* further that the refusal of B. to join in the purchase at the trustee's sale—the death of B. and of A.—the sale by A.'s administrator—the purchase by a stranger, and a large investment of money in improvements, would be strong, if not conclusive evidence of an abandonment of the co-tenancy by B., and estop him and his heirs after a long lapse of time.

### Error to Saline Circuit Court.

*J. R. Vance and Johnson & Botsford*, for Plaintiffs in Error.

*Thos. Shackleford*, for Defendant in Error.

NAPTON, Judge, delivered the opinion of the court.

The widow and administrator of Potter filed their petition in the circuit court of Saline County, alleging in substance, that Durett, the father-in-law of William Potter, and Shroyer were tenants in common of a certain tract of land (describing it) in Saline County ; that they became so, by buying under an execution against George W. Allen ; that at the time of such purchase, Shroyer had a deed of trust on said land, to secure a judgment of $2,500 due him by said Allen; that Shroyer had the land sold under this deed, and bought it for $1,164, and that this bid then indicated the amount of his incumbrance. The plaintiffs then state, that by such purchase, Shroyer became the holder of the legal title for the benefit of himself and Durett, his co-tenant, with the right on Durett's part to remove the lien by paying one-half of the amount then bid by Shroyer. Shroyer's death is then stated, and the sale of the land by his administrator to defendant. Durrett's representatives now ask for a decree for one-half of the land on the payment of one-half of $1,164 dollars. The answer admits the purchase by Shroyer and Durett of Allen's interest, at a sheriff's sale, but states that the consideration was merely nominal; that Shroyer's incumbrance of $2,500 exceeded the value of the land.

It is admitted, that Shroyer had the land sold under his incumbrance, but stated that Durrett refused to have anything to do with said sale or to join in his purchase, declaring that the land was not worth the incumbrance; that Allen was then insolvent, and Shroyer had no other security for his debt, but the land in question; that Shroyer made his bid for a mere nominal sum, merely with a view to divest Allen of his equity of redemption and not for the purpose of ascertaining the value of his incumbrance; and the defendant denies that said bid in any way determined the value of the incumbrance; that Durrett refused to join in the purchase and severed his tenancy in common and in law and equity the right of the land vested in Shroyer, and that defendant having purchased from Shroyer's administrator is entitled to said real estate in his own right. The defendant avers that the land was wild and unimproved until he bought it and took possession, and that he has since expended $5,000 in improvements.

This is the substance of the petition and answer. To the answer there was a demurrer and the demurrer was overruled, and the plaintiff declined to reply and stood upon the demurrer.

The only question in the case is, whether the facts stated in the answer constitute a defense to the petition. Both the petition and the answer are exceedingly defective. No date is given in either to any of the transactions alleged, nor is it stated in the petition, who owned the judgment and execution under which Shroyer and Durrett bought, whether a stranger or the mortgagee, or one of the purchasers. Whilst the answer states several mere legal inferences assumed by the pleader, the question remains whether the facts stated show a defense.

In fact, as the demurrer goes back to the first pleading, the case might be decided on the insufficiency of the petition. In any view of the case it is difficult to see any plausible basis to support the decree which the court is asked to make. It would seem from the petition and answer, that Shroyer and

Durrett bought at an execution sale against Allen and the equity of redemption owned by Allen, the defendant in the execution. At what time this purchase was made, or in whose favor the execution was, are facts not stated anywhere, nor is any explanation given to account for such a purchase. If the answer is correct, as we must assume, the land of Allen was incumbered at the time by a deed of trust for Shroyer's benefit, to an amount greater than its value. Yet Shroyer is one of the joint purchasers, and if we adopt the fact as true, which the answer alleges, that Allen's equity of redemption was worth nothing, then Shroyer and Durrett united in a purchase of a title of no value whatever, and that is the condition in which the pleadings in the case exhibit it here.

We might conjecture that there was some understanding between Shroyer and Durrett, inconsistent with this assumption, and which induced Shroyer to ask the participation of Durrett in the purchase of this equity, so that Durrett should pay him one-half of his claim against Allen, and he and Durrett divide the land. But no facts are stated to authorize any conjectures about the purchase. Even the year when it was made is not stated. A purchase by the mortgagee, of an equity of redemption sold on an execution in favor of the mortgagee is regarded of no validity and leaves the mortgage still in existence. (McNair vs. O'Fallon, 8 Mo., 188.) But we have no information in regard to this execution under which Shroyer and Durrett bought. The price paid is alleged to have been nominal, and if so, there was doubtless an agreement between them in regard to their future course.

Shroyer ultimately caused a sale under his mortgage or deed of trust and wanted Durrett to join him in bidding for the land, and Durrett refused to have any further connection with the matter. Shroyer's bid at this sale was $1,000 dollars or thereabouts, and he thus acquired the legal title.

This legal title passed on his death to his heirs, and to pay the debts of the estate, it was sold by his administrator to the defendant. All the parties to the transaction are dead, Shroyer, Durrett and Allen. And now Durrett's representa-

tives, in behalf of his creditors, ask to be allowed to be considered as a tenant in common with defendant, upon the payment of one-half of $1,100 or thereabouts, which was Shroyer's bid for the land on the sale made by the trustee.

Considering Shroyer and Durrett as tenants in common of an equity of redemption, to make their title valuable, the first thing for them to do was to extinguish the incumbrance. Durrett was invited to participate in this foreclosure. He refused, and his refusal was really a repudiation of any further interest in the matter. He abandoned whatever arrangements had been agreed upon between himself and Shroyer.

It is clear that the plaintiffs could not have any equity, without paying the half of Shroyer's claim against Allen, which they do not propose to do. But it is also clear, taking the imperfect allegations on both sides as correct, that Durrett abandoned his tenancy in common.

Certainly, after the death of Shroyer, and the death of Durrett, and the sale to the defendant, a court of equity would require a very strong case to allow the purchase of a third person, ignorant of the facts, to be defeated. The law concerning tenants in common and purchases by one, of the outstanding titles, we do not consider applicable to this case.

It is inferrable from the facts stated in the answer, that Durrett had abandoned whatever arrangement may have existed between him and Shroyer in regard to a division of these lands. But if he had not, his representatives can make no claim in equity to the half of these lands without paying for the half of Shroyer's claim. They do not propose this. If they had, I doubt if a court of equity would enforce it against a stranger after a lapse of years. It seems that Durrett, in his life-time, made no offer to pay one-half of Shroyer's incumbrance; that he positively refused to take any part in the foreclosure or sale by the trustee.

This looks like a waiver or abandonment of his tenancy in common, and an estoppel to a subsequent operation of such title after the death of all parties. The descent of the legal title to Shroyer's heirs, and the sale by the administrator to a stranger,

who had no knowledge of the transaction alleged, and who is not charged to have had, and who has expended large sums in improving the land, would require a much stronger claim than the one set up in this petition, to authorize a transfer of title, by a court of equity.

Judgment affirmed. Judge Adams did not sit in this case; the other judges concur.