VANDEVENTER TRUST COMPANY, Appellant, v. WESTERN STONEWARE COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted February 8, 1917. Opinion Filed March 6, 1917. Opinion on Motion for Rehearing Filed April 18, 1917.

1. **APPELLATE PRACTICE: Review of Equity Case: Deference to Trial Court's Findings.** The burden being upon the plaintiff, in an action to vacate and enjoin the enforcement of a judgment on the ground that it was obtained by fraud practiced upon the court and upon plaintiff and its attorney, to establish the fraud by clear, strong and cogent evidence, leaving no room for reasonable doubt of its existence, the appellate court will defer largely to the finding of the trial court that plaintiff did not sustain that burden.

2. **JUDGMENTS: Equity: Proceeding to Vacate Judgment: Adequate Remedy at Law.** A garnishee failed to appear at the hearing of the issue raised by a denial of its answer to the interrogatories, and judgment was rendered against it. At the same term of court, it filed a motion to vacate the judgment on grounds other than that the judgment was procured by fraud practiced upon the court and upon plaintiff and its counsel, which motion was overruled. After the lapse of that term, garnishee sued in equity to vacate and perpetually enjoin the enforcement of the judgment, on the ground that fraud was practiced upon the court and upon plaintiff and its counsel in the procurement of the judgment. The petition did not allege that garnishee was ignorant of the alleged fraud practiced, and its own evidence tended to prove that it knew of the facts relating to the alleged fraud at the time it filed the motion to vacate the judgment. *Held,* that, in view of the fact that garnishee was cognizant of the alleged fraud at the time it filed

the motion to vacate the judgment, it had an adequate remedy at law, and hence it was within the rule that equity will not vacate a judgment where plaintiff had a plain and adequate remedy at law in the court wherein the judgment was rendered and neglected to avail itself of such remedy.

3. ———: ———: ———: —,——. A proceeding in equity to vacate a judgment will not lie where plaintiff had an adequate remedy at law in the proceeding in which the judgment was rendered.

**On Motion for Rehearing.**

4. ———: ———: ———: **Fraud in Procurement of Judgment.** The action of an attorney for a judgment creditor, in withholding from evidence, at the hearing of the issue raised by a denial of the answer to the interrogatories, at which the garnishee failed to appear, the debit side of an account between the judgment debtor and the garnishee, which had been furnished him by the latter, did not constitute such fraud as would justify a court of equity in setting aside the judgment rendered against the garnishee at such hearing, since, in order to warrant the vacation of a judgment for fraud, even in a direct proceeding, it must appear that the fraud was practiced in the very act of procuring the judgment, and "fraud in procuring the judgment" cannot be predicated upon the character of the evidence adduced at the trial nor upon the fact that certain evidence at hand was not introduced.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*Bishop* and *Cobbs, Marshall* and *Henderson* and *Hostetter* and *Haley* for appellant.

(1) The decision in the case of Cross v. Gold, 131 Mo. 585, is decisive in favor of the plaintiff herein of the case at bar, and is in many respects on all fours with the case at bar. In that case, as in this, the plaintiff's attorney agreed to notify the defendant's attorneys of the setting of the case and instead of doing so, took judgment against the defendant. The Court of Appeals held this to be a fraud and set aside the judgment. This case is followed in the case of Schuck v. Lawton, 155 S. W. 21. (2) The fraud practiced by the defendant and

its attorneys in suppressing material evidence known to them at the trial of the garnishment case is sufficient to cause this court to set aside that judgment. The fraud consisted of Mr. Matson suppressing the debit side of the statement of the account of the Pike county Mineral Springs Company with the Vandeventer Trust Company, from the knowledge of Mr. Cooper, and procuring him to testify that there was a balance of $841.45, to the credit of the Mineral Springs Company at the date of the service of the garnishment, and that none of it had been withdrawn, when Mr. Matson knew that it had been withdrawn except 60c and that his company had received $200, of it, and in the further suppressing of this fact from the knowledge of the court, for as Judge DYER testified, no such state of affairs was made known to him when he permitted the judgment to be entered, and that he would not have permitted it to be entered if he had known it. (3) It is wholly immaterial whether the checks withdrawing the deposit of the Pike County Mineral Springs Company were signed by Mr. Cooper or not. The checks were drawn and the money was used by the Pike County Mineral Springs Company. The bank book was balanced every month and the cancelled checks were returned to the Mineral Springs Company, and it was the duty of that Company to notify the Trust Company within a reasonable time, of any errors in the balancing of the book and also of any forged checks, if any such there were, or had been paid by the bank, and the Pike County Mineral Springs Company and its creditor, the Western Stoneware Company, which received and was paid the last check drawn on that account, cannot now be heard to say that any of the checks that were paid by the Trust Company and which purported to have been signed by Mr. Cooper were forged checks, for no such complaint was ever made by the Mineral Springs Company to the Trust Company. McKeen v. Bank, 74 Mo. App. 281; Kenneth Investment Co. v. Bank, 103 Mo. App. 613. Where the parties reside in the same town, ten days has been held to be a reasonable

time for the depositor to examine the returned or cancelled checks and to notify the bank of any errors in the account or of any alleged forged checks. Kenneth Investment Co. v. Bank, 103 Mo. App. 613; Bank v. Mill Co., 182 Fed. 1; Rettig v. Bank, 174 Ill. App. 193.

*J. W. Matson* and *J. S. Fitzgerrell* for respondent.

(1) The law governing this proceeding can be found principally in the following decisions: Lieber v. Lieber, 239 Mo. 31; Curtis v. Bell, 131 Mo. App. 245; Cross v. Gould, 131 Mo. App. 585; Einstein v. Strother, 182 S. W. 122. (2) The proof clearly shows that Mr. W. N. Cooper's name as treasurer of the Pike County Mineral Springs Company was forged to all the checks cashed by the Vandeventer Trust Company, and that up to the time of the trial of the garnishment proceeding in August, 1911, Mr. Cooper was not aware that any such checks had been signed and cashed, but prior to that time he had requested a statement of the Springs Company's account from the Trust Company, and the Trust Company had not sent the same to him. The proof also shows that the Trust Company had sent statements to somebody without proving who they were sent to, and without proving that it suffered any loss thereby, and the sending of those statements to some such person did not in any way estop the Pike County Mineral Springs Company, through its treasurer, or any of its creditors, from proving that the checks, if any, had been forged. Kenneth Investment Co. v. National Bank of the Republic, 103 Mo. App. 613, 619; McKeen v. The Boatman Bank, 74 Mo. App. 281, 290-291; Wind v. the Fifth Nat'l Bank, 39 Mo. App. 72; Kenneth Investment Co. v. National Bank of the Republic, 96 Mo. App. 125. (3) The proof also clearly shows that if there had been any fraud at all practiced upon the appellant, and the respondent unqualifiedly denies there was any such, then the appellant's attorneys knew of all those alleged facts between the entry of the findings of the circuit court in the garnishment proceeding on August 1st and the final judgment on August 4, and its attorney, Mr. Zeppenfeld,

was in the circuit court at that time, and was told by the court to file his motion in the nature of a writ of *coram nobis,* or a motion to set aside the default findings, and he declined and refused so to do, but they did file two other motions at that term of the court, and it is certainly too late now to come into court and ask to proceed in an equitable proceeding when they could have had the same remedy at that time and arrived at the same result if their evidence justified it in the original garnishment case. Wyman v. Hardwick, 52 Mo. App. 621; Phillips v. Samuel, 76 Mo. 657; Einstein v. Strother, 182 S. W. 122. (4) In all these cases strict proof of fraud, if any, is required of the plaintiff, and the burden is upon the plaintiff to so prove his case, and in this case the appellant has failed to prove any fraud as shown by the evidence. Flood v. Busch, 165 Mo. App. 143, 152. (5) Injunction will not issue in a case of this character unless the plaintiff shows that he had a good defense to the original claim, and in this case all the evidence clearly shows that the appellant is trying to stand behind the cashing of forged checks without even showing who got the benefit thereof, and to whom the money was really paid. In fact, the appellant did not attempt in this case to bring into the court any one to whom it claimed it sent any statements, or to have paid any of those checks to which Mr. Cooper's name had been forged. Sauer v. Kansas City, 69 Mo. 46.

REYNOLDS, P. J.—This is a suit in equity to restrain the enforcement of a judgment.

The Western Stoneware Company, defendant, and respondent here, having recovered a judgment against the Pike County Mineral Springs Company, proceeded against the Vandeventer Trust Company, plaintiff, and appellant here, as garnishee, in the Circuit Court of Pike County, and there recovered a judgment against the garnishee for the sum of $419.50 debt and $13.50 costs. From this judgment the garnishee appealed to our court and the judgment of the circuit court was affirmed. [See Western Stoneware Company v. Pike County Mineral

Springs Company, defendant, Vandeventer Trust Company, Garnishee, 172 Mo. App. 696, 155 S. W. 1083.] Afterwards, the Vandeventer Trust Company, hereafter referred to as the Trust Company, commenced this action in the Circuit Court of Pike County against the Western Stoneware Company, hereafter referred to as the Stoneware Company, seeking to have that judgment set aside, annulled and vacated and to perpetually enjoin the Stoneware Company from attempting in any manner to enforce the judgment, praying also for a temporary injunction restraining the Stoneware Company from attempting to enforce the judgment by execution or otherwise pending the determination of the cause.

The petition in the case, setting out the obtaining of the judgment, charges that it was obtained by fraud practiced upon the court and upon the plaintiff and its attorney, the fraud charged as having been practiced upon the court being, that defendant, with the evidence in its possession and with the knowledge that plaintiff was only indebted to the Pike County Mineral Springs Company, hereafter referred to as the Mineral Springs Company, in the sum of sixty cents, and its attorney having in his possession a statement from plaintiff here, showing the debits and credits of the account as between the Trust Company and the Mineral Springs Company, which account had been furnished to that attorney at his request, had, on the trial of the garnishment, having in its possession an account furnished it by plaintiff, had exhibited to the court only one side of the account, which was on one page of the account, showing the credits, but had suppressed and concealed from the court the other page, which showed the debits or amounts drawn out from the Trust Company by checks of the Mineral Springs Company, and that in violation of an agreement between counsel for the Stoneware Company, defendant, and counsel for the Trust Company, had proceeded with the trial of the garnishment proceeding in the absence of any representative or attorney for the Trust Company. This is a summary of the petition in this case, which sets out the facts relied upon by plaintiff very minutely.

The answer specifically denies all the charges of fraud, concealment or misrepresentation and denies any of the agreements alleged to have been made between counsel for the Trust Company and for the Stoneware Company.

A temporary injunction was issued and the cause coming on for hearing, the court at the conclusion of the testimony, rendered judgment dissolving the injunction and dismissing plaintiff's action. From this plaintiff has duly perfected its appeal to our court.

All of the proceedings connected with the rendering of judgment against the garnishee, the judgment in that case, the mandate and decision of our court when the cause was appealed to our court, were in evidence at the trial of this case. The plaintiff also introduced the testimony of the attorney who had represented the Trust Company in the garnishment proceedings, taken in the present trial by way of deposition. That attorney deposed, in effect, that he had had an agreement with the attorney for the Stoneware Company, under which he had furnished him a statement of the account of the Mineral Springs Company with the Trust Company, showing the debits and credits in detail and showing only sixty cents as due by the Trust Company to the Mineral Springs Company; that he had met that attorney in St. Louis concerning the garnishment matter; that at that interview he had asked the attorney of the Stoneware Company if he had seen the answer which the garnishee had put in in that case, denying any indebtedness of the Trust Company to the Mineral Springs Company in excess of sixty cents; that that attorney said he had; that the attorney for the Trust Company then asked him if he had filed a denial to that answer or intended to file one, and that the attorney for the Stoneware Company answered, "No;" that he (that attorney) was satisfied that that was a correct statement of the balance; that he wanted to get a copy of the ledger account of the Trust Company with the Mineral Springs Company as he believed that the officers of the Mineral Springs Company had been guilty of misappropriation of the funds of that com-

pany and were defeating its creditors; that the attorney
for the Trust Company said that if that was the pur-
pose for which a statement was desired, he would ar-
range with the Trust Company to furnish that informa-
tion; that the attorney for the Trust Company further
said, on that occasion, to the attorney for the Stoneware
Company, that he wanted the latter to let him know if
any papers, such as pleadings or motions, which he
might think necessary to file in the case, were filed, and
to let him have a copy of them; that the attorney for de-
fendant said he would do so and keep him informed on
the case as it went along, and further told the attorney
for the Trust Company that the case was set sometime
in June, but had been continued until the next term of
the court to be held in October, and that he would keep
the attorney for the Trust Company informed as to the
setting of the case; that it was under this arrangement
he had furnished the attorney for the defendant with
the statement from the Trust Company; that this oc-
curred sometime in June, 1911; that he was out of the
city sometime after that and knew nothing more of the
case and was paying no attention to it until he received
a letter from the clerk of the Circuit Court of Pike
County, of date August 2nd, advising him by direction of
the judge of the court, that on the first of August the
case against the Trust Company as garnishee had come
on for hearing, but the garnishee making default, the
court had found in favor of the plaintiff on its denial of
the garnishee's answers, found the garnishee indebted
to the Mineral Springs Company in the sum of $841.45
at the date of the service of the garnishment and ordered
the garnishee to pay plaintiff in that action, defendant
here, the sum of $516 on or before August 4, 1911; that
thereupon he had taken steps in connection with a local
attorney to set aside the judgment; that he went from St.
Louis to Bowling Green and participated in the hearing
of the motion to set aside the judgment, which on being
overruled, was appealed to the St. Louis Court of Ap-
peals, that being the case heretofore referred to as de-
cided by our court.

The attorney for the Stoneware Company, testifying before the court in the instant case, specifically denied having had any such agreement or understanding, or having made any of the promises set out by the attorney for the Trust Company in his deposition, he testifying that he had met the attorney for the Trust Company in St. Louis only once and that all which then took place between them was that he reminded the attorney for the Trust Company that he had agreed to send him a copy of the account; that the attorney telephoned to the Trust Company and told him (the attorney for the Stoneware Company) that if he would wait he would let him have the statement of account that day, but that he (attorney for the Stoneware Company) told the attorney for the Trust Company that he wanted to take a train home that afternoon and could not wait as he was in a hurry to catch the train and that that was all that was said between them; that he was with the attorney a very short time and left for home that afternoon.

The motion to set aside the finding of the court touching the indebtedness of the Trust Company to the Mineral Springs Company and which will be found in the report of the case when before us (see 172 Mo. App l. c. 701), and which was filed at the same term (July term) of the court at which that judgment against the Trust Company, as garnishee, had been rendered, was in evidence at this trial. As will be noticed, it assigns two grounds why the finding of the court as to the indebtedness should be set aside: First, that the denial of the garnishee's answer was not filed until July 17, 1911, and the garnishee was without knowledge or information that its answer had been denied until after the trial of the garnishment proceedings and the order entered against it on the first day of August; and, second, because the court was without jurisdiction over the garnishee or the subject-matter of the garnishment for reasons therein stated.

This motion was heard before the court on August 4, 1911.

It was in evidence in the hearing of the present case that in passing on the motion to set aside the finding and judgment in the garnishment proceeding the Honorable B. H. Dyer, who was then the judge of that court, had entered up a finding to the effect that it seemed to him that the garnishee was in court. Noting the return of service by the sheriff, he adds, "and then when the Vandeventer Trust Company, as garnishee, presented its answer to interrogatories it made its appearance, and it is due to them to take notice of the actions of the court with respect to whatever might be done in this case, and it could not say that by having been made a party and ignored whatever steps might be taken, and if it did, it is negligent of its own interests and its own duties in this cause and ought to be held as putting itself in that position by its own negligence. If they could show that they were affirmatively taken advantage of in some way, and an affirmative reason other than the mere neglect, why it was not here, that would probably be good grounds in setting this matter aside, but there is nothing of that kind even suggested to the court. There are only two reasons assigned; that the court has no jurisdiction and the other one is the mere fact that it was not here."

Called as a witness in the present case, that judge testified that he remembered the case of Western Stoneware Company v. Pike County Mineral Springs Company, in which the Vandeventer Trust Company was garnishee, as pending in the Circuit Court of Pike County, of which he at the time was the judge; that he remembered that at the time the motion attacking the jurisdiction of the court in rendering the garnishment judgment was up, the same attorney for the Trust Company, who here deposed to having had an agreement with opposing counsel, as above set out, was present in court and then claimed, in argument on that motion, that some misrepresentation had been made by the attorney for the Stoneware Company to him as attorney for the Trust Company, and that he (the judge) called the attention of the attorneys then representing the Trust

Company to the fact that no such suggestion was in the motion and therefore could not be entertained; that it would have to be incorporated in the motion before it would or could be entertained; that he said to the attorneys for the Trust Company, in substance: "You gentlemen are standing here before the court attacking the jurisdiction of the court, and you seem to want to stand or fall on that proposition; while I think its proper to go into that matter, yet you don't ask the court to give you relief on that ground and until you do the court can't entertain the proposition you address yourself to." There was no contradiction of this testimony given by the former judge.

In this condition of the case we think its decision lies within a very narrow compass.

Our Supreme Court in Lieber v. Lieber, 239 Mo. 1, l. c. 31, 143 S. W. 458, has said:

"The law is well settled here and elsewhere, that a court of equity will in a direct proceeding grant relief against a judgment or decree procured by fraud, providing the fraud is established by clear, strong and cogent evidence, leaving no room for reasonable doubt of its existence; and provided further, that the fraud thus perpetrated was exercised in the very procurement of the judgment complained of, and was a fraud upon the court, as well as upon the other party to the suit."

The testimony in this case was very contradictory on the matter of imposition upon the practice of the alleged fraud upon the court, or of bad faith to counsel; as to the latter, counsel for one party testifying to a certain agreement between him and the counsel for the other party, the latter most specifically denying any such understanding or agreement. In this condition of the testimony, the burden being upon the plaintiff to prove these charges, we must defer largely to the finding of the learned trial court that plaintiff had not sustained that burden.

Then comes the charge of imposition upon the court by the concealment of evidence, the alleged concealment consisting in showing one side of the account between the Trust Company and the Mineral Springs Company, which

showed the deposits made by the latter company with the Trust Company, but withholding that side or part of the account which showed the checks made on its account by the Mineral Springs Company and paid by the Trust Company on account of the Mineral Springs Company. While it is clear that the attorney, who represented the Stoneware Company in the garnishment proceeding, had these debit and credit sheets before him, his claim is that the sheet showing checks which had been paid was not correct, in that the treasurer of the Company, whose signature was necessary to the validity of checks drawn by that company on its bank account, testified positively that he had not signed or drawn any such checks. Whether, under such circumstances, the attorney was guilty of fraudulent concealment upon the court in not presenting the garnishee's side of the case, is a matter as to which we need express no opinion.

The fundamental difficulty meeting appellant here and which must be overcome, if it is to recover, is, that it appears very clear to us that it had a plain and adequate remedy at law, in the proceeding itself; and that, of course, is a bar to an action in equity.

When, at the same term at which the judgment was entered against this plaintiff, as garnishee, and within three days after its rendition, plaintiff appeared in court and attacked that judgment, it filed its motion to vacate the judgment, limiting its attack thereupon to two grounds, viz:

"1st. Because the plaintiff's denial to the garnishee's answer was not filed in this cause until July 17, 1911, and said garnishee had no knowledge or information that its answer had been denied until after the alleged trial in garnishment proceedings were had in this court and after the order and finding sought to be set aside were made by this court.

"2nd. Because this court has no jurisdiction over this garnishee, nor has it acquired jurisdiction as to the subject-matter of the alleged garnishment, and garnishee avers that the issuance of an execution from this court directed to the sheriff of the city of St. Louis and

attempted summoning of this garnishee by said sheriff to appear in this court and answer interrogatories is null and void and does not confer any jurisdiction upon this court.''

It will be noticed that none of the grounds now urged against the judgment were covered by that motion. When plaintiff's counsel then attempted to raise them, the trial judge not only called the attention of counsel to that omission, but clearly intimated that he would allow the motion to be amended to cover them; gave the counsel for the Trust Company a broad intimation that he would consider matters justifying such attack if embodied in their motion, which they had filed—matter which would enable him to go into that. They declined to do that and elected to stand entirely upon the question of the jurisdiction of the court over the garnishee and, in fact, over the subject-matter, and upon the fact that they had had no knowledge that the answer of the Trust Company had been denied. Not a word or line in this motion suggests imposition on the court, or breach of faith with counsel—the matter now set up and relied upon. That those matters were then fully within the knowledge of the Trust Company and its counsel, is clear. The deposition of one of its counsel, introduced at the trial of this case, shows that. He deposes that on August 3, 1911, he told the president of the Trust Company of what he claimed to have been his arrangement and transactions with the attorney for the Stoneware Company. It appears that he was present in court participating in the presentation of the motion when, on August 4, 1911, it was before the court. So this Trust Company and its counsel had as full knowledge of all the facts then as it claims that it now has. If at the time when the motion was made to correct or set aside the judgment of garnishment the Trust Company, or its attorneys, did not then know of the matters of which it now complains, it would not be deprived of its right to prosecute the present suit. So our court held, in effect, in Cross v. Gould, 131 Mo. App. 585, 110 S. W. 672. But there is no averment in the petition nor any

testimony that the Trust Company and its counsel did not know all the facts of which it now complains when the motion attacking the judgment against the Trust Company was filed, heard and passed upon.

Plaintiff here not only had the right, but was given the opportunity, at' and during the term of court in which the judgment was entered against it, to attack that judgment for the very causes here alleged. It is not only assumed to have known that, but was distinctly advised by the court that it would entertain such attack. It did not choose then to avail itself of that right.

"To be entitled to equitable relief against the enforcement of a judgment, the party must have exhausted his resources at law, for equity will not grant relief where he has an adequate remedy at law by any form of motion, petition, or proceeding in the original action. . . . Injunction will not be granted to restrain the enforcement of a judgment or to order a new trial, where the party still has an opportunity to move the trial court for a new trial, or had such opportunity and negligently omitted to avail himself of it." So the general rule is stated 23 Cyc., pp. 981-982, par. 4, subdivisions a and c.

In a very recent and accurate compilation the right to relief in equity against judgments is stated thus:

"Before a court of equity will interfere even with an inequitable judgment, it must appear that the injured party has used due diligence in presenting the matter to the court, and in doing whatever lies in his power to protect his interest. . . . One of the general rules governing the subject of equitable relief is that it will not be granted when the matter on which the claim to relief is founded was litigated in the original action, or where the matter might have been litigated by the exercise of due diligence." [See sections 195, 196, 15 Ruling Case Law (pp. 740, 741).]

A multitude of decisions are cited in support of this proposition by both of the above compilations.

Among other cases cited in 23 Cyc., supra, is that of Missouri, K. & E. Ry. Co. v. Hoereth, 144 Mo. 136, 45

S. W. 1085 which. see. To like effect also see Shelbina
Hotel Ass'n. v. Parker, 58 Mo. 327; Chicago & Alton
R. R. Co. v. Maddox, 92 Mo. 469, 4 S. W. 417; Perkins
v. St. Louis, K. C. & C. R. R. Co., 143 Mo. 513, 45 S. W.
260. In the latter case, commencing at page 518, quoting
the rule as laid down in 1 Black on Judgments, section
363, to the effect that the party must have exhausted
his possible legal remedies by appeal or writ of error
before equity would hear him, Chicago & Alton R. R. Co.
v. Maddox, supra, and other cases are there cited and
quoted as holding that where the law affords an ample
and adequate remedy, equity declines to interfere, our
Supreme Court says (page 519):

"A party who is fully apprised of his rights cannot
remain passive until too late to use the remedies which
are open to him at law, and then after the lapse of sev-
eral years be permitted to invoke equitable aid to vacate
and set aside the solemn judgment of the courts."

In Laffoon v. Fretwell, 24 Mo. App. 258, stating
that in the case then before that court it was true that
in the petition it is averred that the original answer of
the garnishee was prepared for him by one of the at-
torneys of the opposite party, whereas in the motion for
new trial there was no such averment, Judge Hall,
speaking for the Kansas City Court of Appeals, says
(l. c. 263): "But such fact could have been alleged in
said. motion as a reason in support thereof, and every
fact set out in the petition in this case as a ground of
relief, that was not averred in the motion for a new trial
in that case, could have been so averred."

In Wyman v. Hardwicke, 52 Mo. App. 621, Judge
Ellison, speaking for the Kansas City Court of Appeals,
has said (l. c. 625):

"When a party seeks relief by injunction from a
judgment which has been rendered against him in a
court of general and competent jurisdiction, it should ap-
pear. that he could not have remedied the ills of which
he complains by the ordinary legal procedure, as by ap-
peal or writ of error."

In Einstein v. Strother, not yet officially reported, but see 182 S. W. 122, Judge Johnson, speaking for the Kansas City Court of Appeals, after stating that the petition failed to show that plaintiff availed himself of adequate remedies at law, says:

"Aside from the general allegation that he has no adequate remedy at law, which means, of course, that he had none when he filed his petition in this case, there is nothing to show that he did not have full knowledge of the facts relating to the allowance in question before the close of the term, and therefore had an adequate remedy for the mistake by direct proceeding in that case. A constitutive fact in a case of this character is that the plaintiff continued in the error until by lapse of the term the opportunity to invoke legal remedies ceased. The allegation that plaintiff was ignorant of the true facts at the time of the adjudication is not equivalent to an allegation that he remained, without fault of his own, in such ignorance until the close of the term. It follows that, even upon the hypothesis that the petition alleges a mistake of fact for which equity should give relief, it fails to state a cause of action, for the reason just stated."

That is very applicable here. Here, as there, we find no allegation that appellant was ignorant of the facts, and its own evidence tends to prove that it knew all the facts now relied upon when it filed its motion attacking the judgment against it. By neglecting then to avail itself of its right to attack that judgment, it lost the right to proceed in equity. On that ground, that is to say, that the plaintiff here had an adequate remedy at law in the case wherein the judgment was rendered, and lost it by its own laches and neglect and failure to avail itself of it, it cannot now be heard in a court of equity to attack and set aside the judgment then rendered, upon the very same grounds then available.

Other points are made by learned counsel for appellant which we do not deem it necessary to pass upon.

The judgment of the circuit court is affirmed. *Allen, J.*, concurs; *Becker, J.*, not sitting.

## ON MOTION FOR REHEARING.

ALLEN, J.—Appellant asks us to grant a rehearing on the ground that the court, in its opinion heretofore filed, assumed that counsel representing appellant (then garnishee) in the original proceeding, "had, at the time they filed a motion to set aside the judgment by default, knowledge of the fact that counsel for plaintiff in said case had, in presenting its testimony for the purpose of obtaining judgment by default, suppressed the debit side of the statement given to them by the counsel for the Trust Company;" whereas it is said that the record nowhere shows that at the time of the hearing on the motion to set aside the default judgment, counsel then representing appellant had knowledge of the fact that the debit side of the aforesaid statement or account had been suppressed.

As to this phase of the case it is only necessary to say that the act of withholding from evidence the debit side of the account mentioned—the propriety of which we do not pass upon—could not, we think, under any view of it, constitute such fraud as will justify a court of equity in setting aside the judgment. "A judgment of a court of competent jurisdiction will not be set aside in equity because it was rendered upon a fraudulent cause of action, forged document, perjured testimony or any other matter to which full defense might have been interposed on the trial, unless such defense was prevented by fraud of the party who recovered the judgment. [McDonald v. McDaniel, 242 Mo. l. c. 176, and authorities cited, 145 S. W. 452; Gallagher v. Chilton et al., 192 S. W. (Mo.) 409, l. c. 412; Wolf v. Brooks, 177 S. W. (Mo.) 337; Railroad v. Mirrieless, 182 Mo. 126, 81 S. W. 437; Fears v. Riley, 148 Mo. 49, 49 S. W. 836; Hamilton v. McLean, 139 Mo. 678, 41 S. W. 224.]

In United States v. Throckmorton, 98 U. S. 61, quoted in Hamilton v. McLean, supra, l. c. 687, it is said:

"The doctrine is equally well settled that the court will not set aside a judgment because it was founded on a

fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. . . . That the mischief of re-trying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterward ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.''

In Fears v. Riley, supra, l. c. 58, 59, it is said:

''It is the settled law in our State that in order to set aside a judgment for fraud, even in a direct proceeding, it must appear that fraud was practiced in the very act of obtaining the judgment. [Lewis v. Williams, Admr., 54 Mo. 200.] It is not enough that there was a fraud in the cause of action on which the judgment is founded and which could have been interposed as a defense (unless its interposition was prevented as a defense by fraud.) [Payne v. O'Shea, 84 Mo. 129; Murphy v. DeFrance, 105 Mo. 53; Oxley Stave Company v. Butler Co., 121 Mo. 614.] The judgment must be concocted in fraud, and the fraud must be actual fraud *as contradistinguished from a judgment obtained on false evidence.* [Moody v. Peyton, 135 Mo. 482.]'' (Italics ours.)

It is unnecessary to collate the many other authorities to which reference might be made in this connection, or to quote further from the opinions of our courts which reflect the view expressed above. It is quite clear that the charge that respondent's counsel omitted to introduce in evidence the debit side of the account, supra, or suppressed the same, at the trial of the original case by default, could not justify a court of equity in setting aside the judgment, if equity will refuse to set aside a judgment though obtained upon perjured testimony, or a forged instrument, or other false evidence. ''Fraud in procuring the judgment'' in the sense in which that term is used in cases of this character, cannot be predicated

upon the character of the evidence adduced at the trial which resulted in the judgment sought to be set aside, or upon the fact that certain evidence at hand was not introduced.

The motion for rehearing must be overruled, and it is so ordered. *Reynolds, P. J., concurs; Becker, J.,* not sitting.

**St. Louis Court of Appeals. Argued and Submitted February 8, 1917. Opinion Filed March 6, 1917.**