BRINKERHOFF-FARIS TRUST & SAVINGS COMPANY, Appellant, v. WALTER O. HILL, Treasurer and Collector of Revenue for Henry County.—19. S. W. (2d) 746.

Court en Banc, June 29, 1929.

*Montgomery & Rucker* for appellant.

*N. B. Conrad, Frederick F. Wesner* and *C. A. Calvird, Jr.,* for respondent.

184

*Stratton Shartel*, Attorney-General, and *L. Cunningham*, Assistant Attorney-General, *amicus curiae*.

RAGLAND, J.—Plaintiff (appellant here) is a corporation located at Clinton, in Clinton Township, in Henry County, Missouri, where it is engaged in the business of a bank and trust company. The defendant is the Collector of Revenue of Henry County. The action

is a suit in equity, brought by the plaintiff as trustee for its shareholders, to restrain the defendant from collecting an excess of state and county taxes levied against the shares of its stock, alleged to be illegal. Henry County is under township organization.

The taxes complained of were levied for the year 1927, based on the 1926 assessment. The petition alleges that the Assessor of Clinton Township assessed the shares of stock in plaintiff bank at one hundred per centum of their true value in money, while he assessed all other property, real and personal, in his township (except sucking animals and poultry which he did not assess at all) at not exceeding seventy-five per centum of its true value, and that such values were subsequently adopted by the State Board of Equalization in equalizing the valuation of each class of property among the respective counties of the State. The petition then proceeds:

"That the taxing authorities (the assessor and the State Board of Equalization) aforesaid deliberately, intentionally, systematically and arbitrarily valued and assessed the plaintiff's property as represented by its shares of stock at one hundred per centum (100%) of its true value in money and deliberately, intentionally, systematically and arbitrarily undervalued and assessed all other property which is subject to an *ad valorem* tax in Clinton Township, Henry County, and in the same class for the purpose of taxation, at only seventy-five per centum (75%) of its true value in money and the said taxing authorities intentionally, systematically, deliberately and arbitrarily failed and omitted to assess poultry of every sort and sucking animals of all sorts in said Clinton Township and that such action by the taxing authorities was a discrimination against and a fraud upon the shareholders of the plaintiff bank and places an unjust and unequal burden of taxation upon the said shareholders and that that part of the taxes sought to be collected by the defendants from the plaintiff herein, which is based on valuation and assessment in excess of seventy-five per centum (75%) of the true value in money of the shares of stock in the plaintiff bank and which amounts to $662.06, is illegal and void because the said deliberate, intentional, systematic and arbitrary undervaluation of all other property and its assessment at seventy-five per centum (75%) of its true value in money and the said deliberate, intentional, systematic and arbitrary valuation of the property of the plaintiff, as represented by its shares of stock at one hundred per centum (100%) of its true value in money, violates Section 3 of Article X of the Constitution of Missouri requiring uniformity of taxation upon the same class of subjects within the territorial limits of the authority levying the tax and violates Section 4 of Article X of the Constitution of Missouri requiring that all property shall be taxed in proportion to its value and violates Section 1 of Article

XIV of the Constitution of the United States in that it deprives the plaintiff's shareholders of the equal protection of the laws and deprives them of their property without due process of law."

The prayer is: ''That the court will forever restrain and enjoin the defendant from collecting or attempting to collect any part of the taxes assessed and levied against the shares of stock aforesaid which is based upon a violation and assessment in excess of seventy-five per centum (75%) of their true value in money."

All the allegations of the petition with respect to discrimination in the assessments are put in issue by the answer. The answer also avers that plaintiff had an adequate remedy at law for its alleged grievances, and that it was guilty of laches.

Plaintiff's evidence tended to show that the Assessor of Clinton Township and the assessors of the other eighteen townships in Henry County had a conference prior to June 1, 1926, for the purpose of agreeing upon the valuations at which they would assess the property in their respective townships that year; that following such conference, and pursuant to the understanding there had, domestic animals in the several townships of Henry County were assessed at from fifty to seventy-five per cent of their actual value, with the exceptions of sucking animals and poultry, which were not assessed at all; that the real estate was assessed at from sixty to seventy-five per cent of its value; and that the shares of stock of all the banks in the county were assessed at full value. The evidence is not to the effect that the assessors agreed to assess domestic animals at less than their full value, but simply that they fixed an arbitrary value: $5 per head for sheep; $30 per head for horses and cattle; and $50 per head for mules, which ranged from fifty to seventy-five per cent of the market value of such animals respectively, as shown by the then current market reports. The evidence does not show that the values of real estate and shares of stock in banks were discussed or considered at the assessors' conference, but, according to plaintiff's experts, the former was in fact assessed at from sixty to seventy-five per cent of its actual value, while the latter was assessed at the full one hundred per cent.

On the part of defendant the Assessor of Clinton Township and the others who were called as witnesses testified that they assessed all the property in their respective townships at what they believed to be the full cash value; that, while they had agreed at their conference upon the value of the *average* domestic animal in each class in order that the assessments in the several townships would be uniform, they had in fact, in making of the actual assessments, assessed all such animals at their full cash value; and that in not assessing sucking animals and poultry they were merely following

a custom of long standing in Henry County, and one which they were advised obtained throughout the State.

No protest of any kind on the part of plaintiff with respect to the alleged discrimination practiced against its shareholders in the assessment of their stock for taxation was ever made to any of the taxing authorities of either the county or the State, until long after the taxes based upon such assessments had become due: and then by tendering the county collector seventy-five per cent of such taxes.

The trial court, in a general finding, found the issues for the defendant, and dismissed plaintiff's bill. This appeal followed.

We held in Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732, following eminent authority, that, if in the assessment of property for taxation in a given taxing district, those whose duty it was to make such assessment, deliberately, intentionally and systematically undervalued certain species of property, while assessing other species at full value, the assessment was not only constructively fraudulent, but violative of both the statute law of this State and the State and Federal Constitutions; that if such discrimination was practiced by the local assessor, though not participated in by either the county board of equalization or the State Board of Equalization, his fraud inhered in the assessment judg-ment; and that the property owner who was so discriminated against was entitled to relief in a court of equity through its injunctive process. And the doctrines of that case were either followed or referred to by us approvingly in Jefferson City Bridge Co. v. Blaser, 318 Mo. 378, 300 S. W. 778; Columbia Terminal Co. v. Koeln, 319 Mo. 445, 3 S. W. (2d) 1021 and State ex rel. v. Dirckx, 321 Mo. 345, 11 S. W. (2d) 38.

It is doubtful whether the evidence in this case warrants a finding that the local assessor intentionally and systematically undervalued real estate and personal property listed with him, other than bank stock; but there can be no question but that his failure to assess sucking animals and poultry was both intentional and pursuant to system. Such failure must have been patent, not only to the county board of equalization, but to the State Board as well, and as the latter board permitted the assessment as a whole to stand, it must be presumed that a like situation obtained with respect to every county in the State. If the owners of bank stock are entitled to an abatement of a portion of their taxes because other property was undervalued, it would appear on principle that all taxpayers of the State should be entirely relieved, so far as the taxes for 1927 are concerned, because the owners of poultry were not taxed at all. It seems necessary that we rechart our course.

The respondent and the Attorney-General, who filed a brief in the case as *amicus curiae*, insist that the appellant, on at least two

grounds, is not entitled to equitable relief: (1) It did not make timely use of available legal remedies which were in every respect adequate and complete; and (2) it was guilty of laches.

I. In the course of the opinion in the Schlotzhauer case, supra, it was said: ''One line of cases is where there is a charge of fraud, which entered into the very assessment judgment and created thereby unlawful discrimination as between the taxpayers of the same general class. The suit before us belongs to this class. The other class of cases is where by some mishap, oversight, or otherwise (excepting fraud) the taxpayer has been overassessed by the assessor. In these cases it has been ruled that the taxpayer should follow the statute and appeal, and that there is no remedy in equity.'' This language carries the implication that an assessment judgment can be attacked for fraud in a court of equity, although available legal remedies have not been previously invoked. But the question under consideration, and the one in decision, was merely whether *certiorari* was an adequate remedy in such case. The broader question of whether a taxpayer who has suffered from a fraudulent discrimination in the assessment of his property was required to exhaust all available legal remedies before he was entitled to relief in equity was not raised or passed on.

The English doctrine is that, as fraud was one of the ''ancient foundations'' of equity jurisdiction, a court of equity has and retains (except where prohibited by statute) jurisdiction to relieve against every species of fraud, notwithstanding any · subsequently acquired power of law courts to grant complete relief. This doctrine was followed in many of the earlier American cases, including some decided by this court. [See Potter v. Herring, 57 Mo. 184.] But later American cases have not blindly followed the doctrine. No hard-and-fast rule is deducible from them: they hold in a general way, however, that the exclusive jurisdiction to grant equitable relief will not be exercised in any case where the legal remedy, either affirmative or defensive, which the injured or defrauded party might obtain, would be. adequate, certain and complete. [Perkins v. Railroad, 143 Mo. 513, 45 S. W. 260; Vandeventer Trust Co. v. Western Stoneware Co., 197 Mo. App. 132, 193 S. W. 995, and cases there cited; 10 R. C. L. p. 318, sec. 62, note 9; 34 C. J. p. 438, sec. 687, note 61.] In any event such rule should, on grounds of public policy, be rigorously applied in attacks on assessment judgments.

The county board of equalization was powerless to grant appellant relief (State v. Dirckx, supra); the statute did not, and does not, provide for appeals to the State Board of Equalization or hearings before it, the hearings it does give being merely matters of grace.

Wherefore appellant says that it was remediless save in a court of equity. Appellant nowhere mentions in its brief and argument the State Tax Commission: the Commission was not referred to in the Schlotzhauer case or in the cases following it. If that tribunal is without jurisdiction to administer relief where fraudulent assessments have been made, such as are charged to have been made in this case, then it must be true, as appellant asserts, that it has no remedy except in a court of equity.

Section 12847, Revised Statutes 1919, confers upon that body, "Subject to the right of the State Board of Equalization finally to adjust and equalize the values of real and personal property among the several counties of the State," the power:

"(1)  To have and exercise general supervision over all the assessing officers of this state, over county boards of equalization and appeal in the performance of their duties, and to take such measures as will secure the enforcement of the provisions of this article, and all the properties of this state liable to assessment for taxation shall be placed upon the assessment rolls and assessed in accordance with the letter and plain provisions of the law.

"(2)  To confer with and advise assessing officers as to their duties under this article and all other laws concerning revenue and taxation, and to institute proper proceedings to enforce the penalties and liabilities provided by law for public officers, officers of corporations, and individuals failing to comply with the provisions of this article or of the revenue and taxation laws. . . .

"(3)  *To receive all complaints as to property liable to taxation that has not been assessed, or that has been fraudulently or improperly assessed, to investigate the same and to institute such proceedings as will correct the irregularity complained of, if any irregularity be found to exist.* . . . . (Italics ours.)

"(6)  . . . Said commission shall also have all powers of original assessment of real and personal property now possessed by any assessing officer, subject only to the rights given by the constitution to the state board of equalization.

"(7)  To cause to be placed upon the assessment rolls omitted property which may be discovered to have, for any reason, escaped assessment and taxation, and to correct any errors that may be found on the assessment rolls and to cause the proper entry to be made thereon.

"(8)  To raise or lower the assessed valuation of any real or personal property, including the power to raise or lower the assessed valuation of the real or personal property of any individual, copartnership, company, association or corporation: *Provided,* that before any such assessment is so raised, notice of the intention of the commission to raise such assessed valuation and of the time and place

at which a hearing thereon will be held, shall be given to such individual, copartnership, company, association or corporation as provided in section 12848.''

Section 12848 provides:

''After the various assessment rolls required to be made by law shall have been passed upon by the several boards of equalization and prior to the making and delivery of the tax rolls to the proper officers for collection of the taxes, the several assessment rolls shall be subject to inspection by the commission, or by any member or duly authorized agent or representative thereof, and in case it shall appear to the commission after such investigation, *or be made to appear to said commission by written complaint of any taxpayer that property subject to taxation has been omitted from said roll, or individual assessments have not been made in compliance with law,* the said commission may issue an order directing the assessing officer whose assessments are to be reviewed to appear with his assessment roll and the sworn statements of the person or persons whose property or whose assessments are to be considered, at a time and place to be stated in said order, said time to be not less than five days from the date of the issuance of said order, and the place to be at the office of the county court at the county seat, or at such other place in said county in which said roll was made as the commission shall deem most convenient for the hearing herein provided. A copy of said order shall be published in at least one newspaper published in said county, if there be one, at least five days before the time at which said assessor is required to appear; or, where practicable, notice by mail may be given prior to said hearing to all persons whose assessments are to be considered. A copy of said order shall be served on the assessing officer at least three days before he is required to appear with said roll. The commission, or any member thereof, or any duly authorized agent, shall appear at the time and place mentioned in said order, and the assessing officer, upon whom said notice shall have been served, shall also appear with said assessment roll. The commission, or any member thereof, or any duly authorized agent thereof, as the case may be, shall then and there hear and determine as to the proper assessment of all property and persons mentioned in said notice, and all persons affected, or liable to be affected by review of said assessments thus provided for, may appear and be heard at said hearing. In case said commission, or any member or agent thereof who is acting in said review, shall determine that the assessments so reviewed are not made according to law, he or they shall, in a column provided for that purpose, place opposite said property the lawful valuation of the same for assessment. As to the property not upon the assessment roll, the said commission, or member or agent thereof, acting in said review, shall place the

same upon said assessment roll by proper description and shall place thereafter in the proper column the value required by law for the assessment of said property. The commission shall also spread upon said roll a certificate signed by each member officiating at the proceeding, showing the day and date on which said assessment roll was reviewed. For appearing with said roll as required herein the assessing officer shall receive the same per diem as is received by him while in attendance at the meeting of the county board of equalization. His claim shall be presented to and paid by the proper officer of the political subdivision, or municipality, of which he is the assessing officer, in the manner as his other compensation is paid. The action of the commission, or member or agent thereof, when done as provided in this section, shall be final, when approved by the state board of equalization. When any property has been reviewed, assessed and valued by the commission as herein authorized, such property shall not be assessed or valued at a lower figure by the local ' assessing or equalizing officer for the year the assessment is made.''

From said Sections 12847 and 12848 it appears: The State Tax Commission is given general supervision over all the assessing officers of the State, with power to enforce its orders; it has all the powers of · original assessment; it may receive complaints as to *property liable to taxation that has not been assessed*, or that has been *fraudulently or improperly* assessed, and apply the proper corrective measures; it can raise or lower the assessed valuation of real or personal property either in specific instances or by class; and it has authority, *on the complaint of any taxpayer* and *after various assessment rolls have been passed upon by the several boards of equalization,* but before the delivery of the tax rolls to the proper officers, for collection, to hold hearings for the purpose of determining whether any property subject to taxation has been omitted from the assessment' rolls and whether any property thereon has been improperly valued, and to make such changes with respect thereto as shall be necessary to make the assessment rolls conform to the facts as found by them.

It is no doubt true that the State Tax Commission was not intended to supplant local assessing officers and boards, but very clearly it is given full and adequate power, not only to supervise, but to review, their work, and where it finds assessments which were not made conformably to law to revise them—and this by inserting where necessary, after a hearing, its own valuations in lieu of those made by the local authorities. It is also true that its revision of the assessments as made by county assessors and boards, in so far as it affects the equalization of the values of property among the respective counties of the State, whether such revision be made before or after the State Board has acted, is subject to the approval of that Board. And in this connection it should be said that, even though the action

of the State Board of Equalization in the first instance completes the assessment judgment, that fact does not preclude a revision of such judgment by the Tax Commission, subject to the Board's final approval. The technicalities relating to judgments of courts are without application.

In Laclede Land & Improvement Co. v. State Tax Commission, 295 Mo. 298, it was said that, if the Tax Commission Act was intended to confer upon the body created by it the powers which in preceding paragraphs we have held the Commission possesses, the Act is violative of Section 10, Article X of the Constitution. The constitutional provision referred to is as follows:

"The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, *but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.*"

It was held in the case just mentioned that the italicized portion of the section clearly embodies the idea that the assessment of local property should be made by local authorities, and not by any state agency which might be created by the Legislature. But it is plain from the section as a whole that its main objective is to prohibit the General Assembly from imposing upon the several political subdivisions of the State, their inhabitants or their property, taxes for purely local purposes: the italicized portion is subsidiary: it merely indicates how taxes for *such purposes* may be assessed and collected. The assessment of property for taxation, though carried on simultaneously by county officers and boards, is for the purpose in part of affording basis for the levy of a state tax: to that extent it is a state assessment. As such it is subject to the jurisdiction of the State Board of Equalization, a state agency created by the Constitution itself. The very fact that the Constitution sets up such a tribunal as the State Board of Equalization demonstrates that it was not the intent of the framers of that instrument that the assessment of property for taxation should be beyond the pale of state supervision and control. Laclede Land & Improvement Co. v. State Tax Commission, supra, to the extent that it is in conflict with the views hereinbefore expressed, is overruled.

Appellant's grievance is not that its property was overvalued, but that it was discriminated against through the undervaluation, and omission in part, of other property subject to taxation. Had it at any time before the tax books were delivered to the collector filed complaint with the State Tax Commission, that body, in the proper exercise of its jurisdiction, would have granted a hearing and would have heard evidence with respect to the valuations complained of; and if the charges contained in the complaint had been

found to be true, the valuations placed on its property would have been lowered, or that on other property raised, the property omitted from' the assessment roll would have been placed thereon, and the discrimination complained of thereby removed. The remedy provided by statute is adequate, certain and complete.

II. To permit taxpayers throughout the State who feel aggrieved through alleged discriminatory assessments of their property to stand silently by until after the taxes have become due and are pressed for collection and then resist their payment by injunction would produce an intolerable condition. The collection of the revenue would be so obstructed that both State and local governments would be seriously crippled, if nothing more. Had appellant made timely complaint to the State Tax Commission, the Commission and the State Board of Equalization, to which it renders an auxiliary service, would, it must be presumed, have at once corrected the alleged discrimination in the assessments, and the State, the county and the road and school districts would have received punctually, and without abatement, the revenue accruing to each of them respectively under the law. It was clearly guilty of laches in not so doing.

We do not recede from any of the positions taken in the Schlotzhauer case: we merely supplement its holdings by the further holding that a taxpayer who is aggrieved by a fraudulent assessment of his property is not entitled to relief in a court of equity until he has first exhausted the remedies afforded by the Statute.

For the reasons herein appearing the judgment of the circuit court is affirmed. All concur, except *Atwood, J.*, not sitting.