# LACLEDE LAND & IMPROVEMENT COMPANY, Relator, v. STATE TAX COMMISSION.

### In Banc, August 28, 1922.

1. **TAXATION**: Assessment.  The State Tax Commission has no power to assess property for purposes of taxation.  That power is lodged in other officers, and was not withdrawn from them by the State Tax Commission Act.  The act contemplates that the commission may, in proper manner, require the several county agencies empowered to assess property to perform their duties, but it does not contemplate that the commission shall perform their duties for them, nor does it empower the commission to adjust or equalize their assessments.  [JAMES T. BLAIR, C. J., dissenting.]

2. ———: State Tax Commission: Changing Assessment.  After the county assessment officers have fixed upon a certain valuation of a specific tract of land as its proper valuation for purposes of taxation, and the State Board of Equalization has thereafter increased the assessment of the properties in the county by twenty per cent, the State Tax Commission has no power to lower the assessment.

3. ———: ———: ———: Powers of Commission and State Board. The State Tax Commission is a mere advisory commission of the

Laclede Land & Imp. Co. v. State Tax Commission.

State Board of Equalization, and may gather facts to aid the State Board in determining whether property in a county has been justly assessed by the county officials in comparison with the assessments in other counties. But not even the State Board of Equalization can act upon individual discrepancies made by the county officials in assessing property; and, since the power is by the Constitution invested in the State Board to adjust and equalize the assessments made by the county assessment agencies in the various counties as compared with each other, and its act in increasing or decreasing the assessment made in any county is therefore final and exclusive, the State Tax Commission has no power to change any assessment after the State Board of Equalization has acted, or in any wise to interfere therewith.

4. ———: ———: ———: **Constitutional Inhibition.** Section 10 of Article X of the Constitution contemplates that the assessment of property for taxation shall be made in the first instance by local authority, and not by any State agency created by the Legislature; and if any portion of the State Tax Commission Act provides a different method of assessment it would be violative of this constitutional provision. The State Tax Commission may as an advisory commission aid the State Board of Equalization to adjust the assessments made by the county officials in the various counties, but it cannot participate as an assessing body in the assessment of individual property in any county.

## Mandamus.

PEREMPTORY WRIT DENIED.

*Daniel & Daniel* for relator.

(1) The chief purpose for which the State Tax Commission was created was to remedy the wrong of great inequality in the burden of taxation caused by inefficient enforcement of the revenue laws of the State concerning the assessment of property. R. S. 1919, secs. 12828, 12829, 12832, 12834, 12847 and 12848. (2) When the real estate of an individual or a corporation is assessed at more than the true value and other real estate in the same county is assessed at much less than its true value, it is the duty of the Tax Commission to remove the discrimination, when the fact of such discrimination is

made known to it; and it has full power to do so. R. S. 1919, sec. 12847, sub-divisions 3, 6, 7 and 8. (3) The commission is charged with the duty of correcting assessments not made according to law after said assessments have been passed upon by the several Boards of Equalization. R. S. 1919, sec. 12848. (4) The sole function of the State Board of Equalization with the assessment of real estate is to equalize the value thereof among the several counties of the State, and no action of said board can deprive the State Tax Commission of the power or relieve it of the duty of equalizing individual assessments of real estate within a county when required so to do by a taxpayer of the county in the manner provided by statute. Mo. Constitution, art. 10, sec. 18; R. S. 1919, sec. 12854. (5) The duties imposed upon the State Tax Commission by Sections 12847 and 12848 are mandatory. (6) The word "many" at the end of line ten of Sec. 12848, R. S. 1919, must be construed as meaning "shall" or "must," the rule of construction in cases of this sort being that may is to be held as meaning shall whenever the statute requiring construction relates to a power conferred on public officers, concerning the public interest and the rights of third persons, who have a claim *de jure* that the power shall be exercised in this manner for the sake of justice and the public good. Steines v. Franklin County, 48 Mo. 177; Leavenworth Railroad Co. v. County Court of Platte County, 42 Mo. 174; State ex rel. v. Laughlin, 73 Mo. 449; Deming v. Engineering & Construction Co., 154 Mo. App. 544; Lapsley v. Merchants Bank, 105 Mo. App. 101.

*Jesse W. Barrett,* Attorney-General, and *Merrill E. Otis,* Assistant Attorney-General, for respondent.

(1) The law creating the State Tax Commission, Article IV of Chapter 119, nowhere requires the commission to give a hearing to a complaining taxpayer. The only hearing referred to is in Section 12848 of Article IV.

The hearing therein provided for is entirely discretionary with the State Tax Commission and is not, therefore, one which can be compelled by mandamus. Sec. 12848, R. S. 1919. (2) The law defining the powers of the State Tax Commission does not authorize the commission to raise and lower individual assessments independently of nor after the final equalization of valuations among the counties by the State Board of Equalization. Secs. 12847, 12848, R. S. 1919. (3) If the law creating the State Tax Commission and defining its powers should be construed as giving to the commission the right to increase or decrease individual assessments within the counties, then such law is inconsistent with Sections 10 and 18 of Article X of the Constitution.

GRAVES, J.—Original action in mandamus. Relator, a Missouri corporation, is the owner of some 41,000 acres of land in Reynolds County. This is what is called "cut-over land," which means land from which has been cut all the timber of value. It is averred that this land is not worth more than two dollars per acre; that the County Assessor wrongfully and fraudulently assessed it at $2.50 per acre; that the County Board of Equalization although fully apprised of the facts, raised the assessment to three dollars per acre; that the State Board of Equalization thereafter ordered and adjudged an increase of twenty per cent, which made the ultimate valuation $3.60 per acre; that such valuation was much above the actual value of such lands; that large portions of the lands in said county were assessed at less than their actual value; that on April 23, 1922, the relator presented its claims to the Missouri Tax Commission, and requested it to readjust the valuation of relator's property, in view of the fact that other properties were assessed at less than actual value, whilst the properties of relator were assessed in excess of actual value; that said Tax Commission declined to assume jurisdiction of such case, and the prayer is to require said Tax Com-

mission to readjust the valuation on relator's property under the conditions stated. The relator further says that upon the filing of its. petition with the Tax Commission it "was the duty of said State Tax Commission to grant to your petitioner a hearing and an opportunity to establish the facts herein and in said. complaint averred, and upon such allegations being established by legal and competent evidence to the satisfaction of said Tax Commission to lower and reduce the assessment of the lands aforesaid to a sum not to exceed its true value, and to a sum not to exceed the proportion of its true value at which it found other lands in said county to be assessed after having increased the assessment of such as were materially below the average proportion of the true value at which such lands were assessed as required by Article IV of Chapter 119, Revised Statutes of .1919, etc."

The petition then avers that on May 3rd the said State Tax Commission refused to hear evidence upon the matter on the ground that it had no jurisdiction as stated hereinabove. The prayer is that this court compel such State Tax Commission to proceed to hear the evidence as to the irregularity of the assessment of lands in said county, and if the lands of relator have been inequitably assessed that proper relief be granted. In other words the petition for our writ proceeds upon the theory that the Missouri State Tax Commission is legally bound to adjust the inequalities in the individual assessments of the sundry individuals in the several counties in the State. Not only so but that this might be done after the State Equalization Board has met, and equalized the assessments as to the several counties of the State.

The return of the respondents is. to the effect (1) that it was without power or right to do this, and (2) that if it did possess the right then the exercise thereof was purely discretionary, and therefore not a subject for mandamus. Further details are left to the opinion.

I.   The State Tax Commission is a non-descript when it comes to the assessment of property. The power to assess   property is fixed in named officers under the law, and unless the Tax Commission Act repeals that law, such commission cannot assess property.   To rule that such Tax Commission Act (Art. IV, Chap. 119, R. S. 1919) repealed the law as to whom the duties were imposed as to the assessment of property would be preposterous.   No agency of the State has considered that such commission has been given such power.   The language of the act itself (save some loosely drawn sections, or parts of sections) indicates no such purpose. After the assessment the law provides that there shall be certain county agencies to fix and determine the wrongs committed by the assessor.   To hold that these agencies were disturbed or superceded by the Tax Commission Act would likewise be preposterous.

The Tax Commission Act contemplates that such commission may, in a proper manner, see that these several agencies empowered to assess property perform their duties, but it does not contemplate that such commission perform their duties for them.   True, it is that such commission may take evidence as to inequalities of assessments, but this is for the sole purpose of advising the State Board of Equalization.   What information the Tax Commission gathers by authority of law, it can give, and should give, to the State Board of Equalization. The State Board of Equalization cannot act upon individual discrepancies in the official work of its subordinate officers, nor can the Tax Commission (a mere advisory commission for the State Board of Equalization) go further.   The Tax Commission may gather facts to assist the State Board of Equalization in determining whether or not the county property has been assessed properly as in comparison with other counties in the State.   The decision of the State Board of Equalization is the finality of an assessment.   This because the Constitution (Art. X, sec. 18), so lodges it.   No law can deprive this board

of its constitutional right to ultimately determine the equalization of property assessments as between the counties. If, after the State Board had acted (as in this case) the Tax Commission could change the assessments, then the constitutional board must yield to a mere statutory board. This is unthinkable. Be it remembered that in this case the relator is asking the Tax Commission to act after the State Board of Equalization has acted, because they aver the act of the State Board of Equalization.

The act creating the Tax Commission will be read in vain, if the view is to be taken that it contemplated an interference with the previous methods of assessing and equalizing the assessments of property. In the act there is no indication that the law-makers intended that property should be assessed other than by assessors named by previous, laws, nor is there in the act intimation that such commission should be the final judicatory to pass upon the individual case of irregular or wrongful assessments. The Tax Commission was formed for a purpose, as indicated by the law. Its purpose was advisory as to taxation. And as to other things not here necessary to discuss. It was authorized to see that the laws pertaining to revenue were enforced, but it was not authorized to assess or equalize assessments. These were left (where the Constitution contemplates) with the local agencies, giving to the commission the power to see that the laws were enforced. Giving the commission the power to see that the laws were enforced does not mean that it can usurp any of the functions of the bodies over which it has supervision. The assessment of property has a fixed meaning in our laws. It includes the act of the assessor, and the boards thereafter authorized to review his acts. Ultimately, when these agencies are through with their work, the State Board of Equalization (constitutional in authority) completes the assessment. We conclude that there is no authority in law for this Tax Commission to interfere with any of the agencies of assessment, from the assessor to the State

Board of Equalization. They can gather information for the information of the latter board, and see to the enforcement of the laws, but not otherwise. As a personal unit in the assessment of property such board has no power. We would rather put this case upon the broad ground than upon the more restricted one. The acts of this Tax Commission in all cases are merely advisory and not otherwise. It recommends matters to the Legislature, but they are not binding. We need not discuss these, because legislative power is fixed by the Constitution.

II. It is most plausibly urged that under paragraphs 3, 6, 7 and 8 of Section 12847 and Section 12848, Revised Statutes 1919, the Tax Commission not only has the power, but it is the duty of such commission to act in cases of the kind presented here. There is some justification for the argument to be gathered

Constitutional Inhibition. from the language of those sections. If, however, it be granted that the sections named go as far as relator claims, then they violate the spirit and well understood construction of Section 10 of Article X of the Constitution. This section reads:

"The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof for county, city, town or other municipal purposes, *but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes.*"

We have underlined the latter portion of the section, because in it is clearly found the idea that the assessment of local property (and by the term assessment we include the action of the County Board of Equalization, as well as the act of the County Assessor) should be made by local authority, and not by any State agency which might be created by the Legislature. This has been the legislative construction heretofore, because that body created local assessors and local equalization boards for the assessments of purely local property, and we doubt that

295 Mo.—20

the Tax Commission law was aimed to be expressive of a different thought. If, however, the sections named, supra, are expressive of a different idea, then we think that they are violative of the spirit of Section 10 of Article X, supra. The assessing scheme of the Constitution is to have local officials fix the values of purely local properties and then under Section 18 of Article X, have the State Board of Equalization equalize as between the counties. Of course the Tax Commission may see that laws are enforced, but cannot enter into the very act of assessment, except as to those matters coming under the old State Railroad and Warehouse Commission Act, which have been delegated to the Tax Commission by the act now under review. We therefore think that the State Tax Commission was right in declining jurisdiction in the case presented to it by relators in this case.

III. Were it granted that the Tax Commission law permitted the Tax Commission in any capacity to participate in the act of assessing individual property in the divers counties in the State (which we have ruled contra above) yet when the State Board of Equalization has acted (as in this case) the assessment is complete, and at an end. The question is practically decided (although it was approached from a converse angle) in the case of State ex rel. v. Jaudon, 286 Mo. 181. We have always ruled that there is not a completed assessment until the State Board of Equalization acts. The converse of that must be true. When said board does act the assessment for the year is complete, and further action as to changing the assessed value cannot be had. This would suffice to require us to deny this writ, but we prefer to put the ruling upon the additional ground, supra, i. e., that the State Tax Commission cannot participate as an assessing body in matters of individual county properties as are here involved.

Our peremptory writ of mandamus should be refused and it is so ordered. All concur except *James T. Blair, C. J.*, who dissents.