BRINKERHOFF-FARIS TRUST & SAVINGS COMPANY, Appellant, v. WALTER O. HILL, Treasurer and Ex Officio Collector of Henry County.—42 S. W. (2d) 23.

Court en Banc, September 28, 1931.

GANTT, J.—This case came to me on reassignment. Action to enjoin defendant from collecting alleged excessive taxes. Judgment for defendant and plaintiff appealed. The case was argued and submitted at our April Term, 1929, and we affirmed the judgment. [323 Mo. 180, 19 S. W. (2d) 746.] The United States Supreme Court granted certiorari, reversed the judgment of this court and remanded the cause for further proceedings not inconsistent with the opinion of that court. [281 U. S. 673.] Our former decision was not upon the merits, but upon plaintiff's right to maintain the action. The United States Supreme Court held that decision to be erroneous. At our October Term, 1930, the case was re-argued on the merits and assigned for an opinion. It is unnecessary to consider the powers of the State Tax Commission. The ruling on that question in our former opinion was not affected by the decision of the United States Supreme Court. That court fully recognized the authority of this court to overrule the case of the Laclede Land & Improvement Co. v. State Tax Commission, 295 Mo. 298, 243 S. W. 887, and to decide that the Tax Commission was authorized to hear and determine the complaint of plaintiff, subject to the approval of the State Board of Equalization. The reversal was based

solely upon the ground that plaintiff was denied due process of law as guaranteed to citizens of the United States by the Fourteenth Amendment to' the Federal Constitution. In other words, the refusal of a hearing on the merits was held to be a denial of due process of law for the reason plaintiff was not authorized, in view of the decision in the Laclede case (which then had not been overruled), to apply to the Tax Commission for relief. We adhere to our rulings in the former opinion, except insofar as such opinion is in conflict with the decision of the United States Supreme Court. Therefore, our former opinion is to the extent adhered to made a part of the present opinion.

It should be noted that the only substantial difference between this case and the case of Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732, insofar as the pleadings, the facts and the relief sought are concerned, is that in this case the facts must be determined from the evidence, while in the Schlotzhauer case the facts alleged in the petition were admitted by the demurrer.

It should also be noted that in the former opinion we said: "It is doubtful whether the evidence in this case warrants a finding that the local assessor intentionally and systematically undervalued real estate and personal property listed with him, other than bank stock." As our former decision was not based upon a finding of the facts, the foregoing statement was not necessary to a disposition of the case, and hence not controlling on the issues of fact. Thus we are free to review the evidence and make such findings as we deem proper.

It should also be noted that taxes were levied against the shareholders of plaintiff amounting to $2648.24 for the year 1927. Plaintiff admits that 75 per cent of said tax, amounting to $1986.18, is lawful and valid, but contends that the amount in excess thereof is illegal and void. It tendered to the township collector for Clinton Township said sum, which was refused as payment in full of its taxes for said year.

The foregoing has reduced the issues to the contention that the township assessor intentionally and systematically discriminated against plaintiff in the assessment of its shares by assessing said shares at one hundred cents on the dollar and assessing practically all other property in the township at seventy-five cents on the dollar.

I. At this point defendant contends that plaintiff is not in position to complain, for the reason its bank stock was not assessed at its true value in money. He admits that said stock and the stock of other banks in the county were assessed as directed by Section 9765, Revised Statutes 1929, but contends that the stock of plaintiff bank could have been sold at a premium, and in that event the assessment would not represent the

value of the stock. The stock of plaintiff bank was assessed at $144 a share. The only evidence on the question was the testimony of the president of plaintiff bank. He testified that he would not sell any of his stock at that price, for the reason he might lose control of the bank. He further testified that he knew of no sales, except when someone died owning stock, and that the last sale was at $120 a share. The evidence does not sustain the contention. The stock was assessed at one hundred per cent of its value, as the statute directs such value to be ascertained. The contention is overruled.

II. We next consider the evidence to sustain the charge of under valuation of real estate. It is summarized as follows:

George Holliday of Clinton, Henry County, abstractor of title, president of the Citizens Bank for twelve years and president of two building and loan associations for six years, testified that he was familiar with the valuation of real estate in Clinton Township; that he made a card abstract of each transfer of real estate in said township from January 1, 1926, to December 31, 1926; that the cards stated the consideration named in the deed, the encumbrance, if any, and the assessed valuation of the real estate as of June 1, 1926; that after completing the card abstract he classified them into those stating the consideration, those for one dollar and love and affection, and those for one dollar and other valuable considerations; that if a substantial consideration was not given, he supplied it in most instances from his knowledge or from information on inquiry; that he then totalled the considerations and the assessed valuations, and the result showed that said real estate was assessed at only sixty per cent of the considerations named in the cards.

H. P. Faris of Clinton, Henry County, since 1867, and president of plaintiff bank, with which he had been connected for fifty-five years, testified that his duties required him to inspect farms and determine values; that he bought and sold a large amount of real estate; that he had conducted sales and exchanges of real estate for others and that he knew the value of real estate in said township on June 1, 1926; that he examined and verified the card abstracts, assisted in tabulating and examining the information obtained from them, assisted in obtaining information as to considerations not named in the deeds, and that they obtained this information in all but a few instances; that a few transfers were the result of foreclosures, partitions, deeds among heirs and sales by non-residents, and the consideration for these transfers was less than the assessed valuation of the real estate; that based upon information obtained from the card abstracts and upon his knowledge of real estate values and assessed valuations of real estate in said township, he was of the

opinion that real estate in said township was assessed at only sixty-five per cent of its actual value.

W. M. Stephens of Henry County for sixty years, county treasurer four years, recorder four years and in the real estate and loan business therein for twenty-eight years, testified that his business required him to familiarize himself with the values of real estate in Clinton Township; that he was often required to investigate its assessed valuation, and that based on his experience and knowledge, it was his opinion that real estate was assessed in said township at from sixty to seventy-five per cent of its actual value.

John B. Redford of Henry County, deputy recorder four years, recorder four years and probate judge eight years, testified that he was engaged in making abstracts, loans and insurance and that his business acquainted him with the values of real estate in Clinton Township; that he represented several loan companies, was examiner for some of them, and in his opinion real estate was assessed in said township at from sixty to seventy-five per cent of its actual value.

There is no evidence contradicting the testimony of these witnesses. However, defendant argues that the evidence is only opinions upon limited investigation and from a small percentage of land in the county. He also argues that the considerations expressed in the deeds are unreliable for the reason the considerations are often "padded." We do not so regard the evidence. The opinions given cover Clinton Township, and in some instances the county. They are not based solely on the card abstract investigation. The knowledge obtained from this investigation supplemented the knowledge of the witnesses obtained from years of experience in business connected with real estate and its transfer in said township. It is substantial evidence tending to show that real estate in said township was in 1926 assessed at less than seventy-five per cent of its actual value. In the absence of evidence to the contrary, we must so hold. There is no evidence tending to show that the considerations stated in the deed were "padded."

III. In furtherance of the assessment of personal property, the assessor of Clinton Township and the assessors of other townships in Henry County, had a conference about May 1, 1926, and agreed on average values for the assessment of livestock in said county for said year as follows: $5 per head for sheep; $30 per head for horses and cattle; $50 per head for mules and $10 per cwt. for hogs. They did not agree to assess animals at less than value, and they did in some instances vary from the agreed average value. They testified that they pursued a uniform valuation in assessing livestock in their respective townships, and in their opinion assessed livestock at its actual value.

Some of the assessment lists were in evidence. They show that the values of livestock were, with very few exceptions, fixed as per agreement. This was not denied by the assessors testifying in the case. Therefore, it must be held that it was the general rule to assess livestock in accordance with the agreement.

IV. We next consider the evidence to sustain the charge of undervaluation of personal property. It is summarized as follows:

H. P. Faris testified that he had conducted sales of horses, mules, hogs, cattle and sheep in Henry County; that sheep in Clinton Township were assessed as of June 1, 1926, at less than $5 a head, which was only fifty per cent of their value; that the Kansas City Daily Drovers Telegram is the standard livestock paper for the market in Henry County; that fifty to seventy-five pound lambs on said date were worth $16.50 per cwt.; that ewes sold at $5 per cwt.; and one hundred and fifty pound wethers sold at $7.50 per cwt.; that the average value of cattle (which includes yearlings, stock cattle and milk cows) in Clinton Township as of June 1, 1926, was $60 per head; that they were assessed at $30 per head; that hogs assessed at an average of $13.90 per head would average in value over the township $21 per head; that mules in said township were assessed at $46 per head when worth from $60 to $125 per head, and that horses were assessed in said township at sixty per cent of their value.

W. H. Irwin, cashier of the Bank of Urich, testified that he knew the value of sheep in Henry County as of June 1, 1926, and that he had loaned on them $16.50 per head; that average cattle were worth from $50 to $70 per head, milk cows from $50 to $70 per head, and hogs were worth the market price on said date.

E. N. McDowell, insurance agent, testified that the Kansas City Daily Drovers Telegram is an authentic market paper; that lambs on June 1, 1926, ranged from $16 to $18 per cwt. of the kind in Henry County; that native lambs were worth from $12.50 to $17 per cwt.; that he knew the hog market of that date and the sales ran from $13.75 to $14 per cwt.

Vance J. Day, of the Clinton National Bank of Henry County, testified that he could refresh his memory from the Daily Drovers Telegram of June 1, 1926; that the average weight of lambs was sixty pounds, worth from $9 to $9.60 per head; that the average sheep was worth $8 per head; that average hogs were worth $27.50 per head; that milk cows were worth more than stock cows; that the average common stock cow was worth $36 per head; that an average cow was worth $60 per head, and that an average steer was worth $99 per head.

The Kansas City Daily Drover Telegram of June 1, 1926, was in evidence. It showed that dressed beef and export cattle from 922 lbs. to 1624 lbs. sold on the Kansas City market from $8.25 to $9.90 per cwt.; yearlings from 528 lbs. to 1084 lbs. sold from $7.50 to $9.75 per cwt.; cows from 670 lbs. to 1410 lbs. sold from $4.50 to $8 per cwt.; common cows from 640 lbs. to 1100 lbs. sold from $3.50 to $4.50 per cwt.; mixed steers from 546 lbs. to 810 lbs. sold from $8 to $9.75 per cwt.; heifers from 517 lbs. to 1230 lbs. sold from $4.50 to $9.50 per cwt.; bulls ranging from 750 lbs. to 2050 lbs. sold from $4.50 to $7 per cwt.; bulk of the sale of hogs $13.75 to $14 per cwt.; stock pigs 125 lbs., $14.50 to $15.35; light weights 170 lbs. to 200 lbs., $13.75 to $14 per cwt.; butchers 200 lbs. to 250 lbs., $13.75 to $14; heavys 250 lbs., $13.25 to $13.80; stags, $10.75 to $11.50; sows, $12 to $12.50; wethers, $7.50 per cwt.; ewes, $5 per cwt.; native spring lambs, $16.25 to $17 per cwt.

Defendant contends this evidence is without substance, for the reason it is based on the Kansas City market of June 1, 1926, as set forth in the Kansas City Daily Drovers Telegram, and that the witnesses had not seen the stock in Clinton Township.

The evidence is not based on the market report in said paper. The witnesses had independent knowledge of values. Of course, they had not seen every animal in Henry County, but they acquired such knowledge in dealing with owners of stock in different parts of the county. The paper did not fix the value of stock in Henry County. It is the authentic market report for that section of the State and was admitted in evidence as tending to show values. In determining the value of stock in Henry County from the market report in the paper, the expense of shipment, amounting to sixty cents per hundred, should be deducted from the value noted in the paper.

They also contend that the paper should not be considered on the question of value for the reason there was no evidence that the stock assessed was of the same grade as the stock listed in the paper. The paper listed the value of all grades of stock. Moreover, it is not a question of grades of stock. It is a question of the average value of stock. The assessors did not assess according to grade, but according to average values agreed upon at the conference. Plaintiff contends that the agreed average values were less than seventy-five per cent of the actual values. We will not analyze the market report in the paper. It is unnecessary to do so. When considered with other evidence on the question, it is clearly shown that livestock in said township was assessed at only about sixty cents on the dollar.

V. Thus it appears that the assessor of Clinton Township and the assessors of other townships in the county assessed the shares of stock of plaintiff bank and other banks in the county at true value. It also appears that they assessed livestock and real estate in the county at less than seventy-five per cent of its value. The evidence shows that this discrimination could not have been accidental. The assessors agreed on average values for livestock long before they could have obtained information on which to base such values as of June 1, 1926. In assessing livestock they systematically fixed values as per the agreement and they systematically assessed real estate of the county at less than seventy-five per cent of its value. The levy in, excess of seventy-five per cent of the value of the shares of stock of plaintiff bank must be held invalid. [State ex rel. Gottlieb v. Western Union Telegraph Co., 165 Mo. 502, 516, 65 S. W. 775; Columbia Terminal Co. v. Koeln, 3 S. W. (2d) 1021, 1025; Jefferson City Bridge Co. v. Blaser, 300 S. W. 778, 785; Boonville National Bank v. Schlotzhauer, 298 S. W. 732, 738; City Ry. Co. v. Beard, 293 Fed. 448.]

It follows that the judgment should be reversed and the cause remanded with directions to enter a decree enjoining the collection or attempted collection of any part of the taxes assessed and levied for the year 1927 against the shares of stock of plaintiff bank in excess of $1916.18. It is so ordered. All concur, except *Ellison* and *Henwood, JJ.,* not sitting.