Donzell BRODIS, Appellant,

v.

UNITED STATES, Appellee.

No. 81–1142.

District of Columbia Court of Appeals.

Argued April 27, 1983.

Decided Nov. 30, 1983.

Steve Kieselstein, law student counsel with whom Stephen J. DelGiudice, Supervising Atty., George Washington University Community Legal Clinic, was on brief, for appellant.

Daniel S. Seikaly, Asst. U.S. Atty. with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and William M. Jackson, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KERN and BELSON, Associate Judges.

BELSON, Associate Judge:

Appellant seeks review of his conviction of one count of attempted petit larceny, D.C.Code §§ 22–103, 22–2202 (1981). His principal contention is that the trial court erred in refusing to allow him to be present at bench conferences held during voir dire of prospective jurors. Appellant argues that the trial court's action violated our

interpretation of Super.Ct.Crim.R. 43(a) in *Robinson v. United States,* 448 A.2d 853 (D.C.1982), *rehearing en banc denied,* 456 A.2d 848 (D.C.1983). Appellant's trial was held before *Robinson* was decided. We hold that our ruling in *Robinson* is not to be given retroactive effect, and we therefore affirm.

Before the trial court began the process of selecting a jury for appellant's trial, appellant's counsel requested that appellant be permitted to be at the bench during any bench conference which might take place during voir dire. The trial judge did not deny the request entirely, but stated that "the ruling is generally no," adding, however, that if on a particular occasion it appeared that it would present no problem to have appellant at the bench, she would so indicate to counsel. The trial judge made it clear that if defense counsel should at any time wish to leave one of the voir dire bench conferences and report to or consult with his client, he was free to do so. Appellant was not present at any of the bench conferences in which jurors participated during voir dire. At no time did the trial judge indicate that appellant's presence would cause no problem, and thereby invite appellant to the bench.

The government does not attempt to distinguish this case factually from *Robinson,* but instead takes the position that *Robinson* should not be applied retroactively to appellant's case.[1] We agree that it should not be.

While our holding in *Robinson* was based upon our construction of Super.Ct.Crim.R. 43(a), we recognize that the rule has underpinnings in the due process clause and confrontation clause of the Fifth and Sixth Amendments, respectively. Thus, it is instructive to review recent holdings concerning the retroactive application of judicial decisions involving constitutional rights as a part of our analysis of whether *Robinson* should be given retroactive application.

Last year, in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Court summarized the developments of the last two decades in the area of retroactivity, and attempted to provide an overview of what it termed the "welter of 'incompatible rules and inconsistent principles'" that have been generated in this area. *Id.* 102 S.Ct. at 2585 (quoting *Desist v. United States,* 394 U.S. 244, 258, 89 S.Ct. 1030, 1038, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)). Without recounting at length here the conclusions reached by the Supreme Court in *Johnson,* it is sufficient for present purposes to note that the Court observed that where it had "expressly declared a rule of criminal procedure to be 'a clear break with the past,' it almost invariably has gone on to find such a newly-minted principle nonretroactive." *Johnson, supra,* 457 U.S. at 549, 102 S.Ct. at 2587 (quoting *Desist, supra,* 394 U.S. at 248, 89 S.Ct. at 1032).

Applying that precept to the case before us, we take cognizance of the fact that for several years prior to the issuance of our holding in *Robinson,* it had been the usual practice of Superior Court judges to bring jurors to the bench to answer questions on voir dire where there was any likelihood that if the answer were given in open court it might prove prejudicial to the defense or the government. *See generally Robinson, supra,* 456 A.2d at 849–50, (Belson, J., statement of reasons for voting to rehear en banc). The practice had grown out of a suggestion made by the United States Court of Appeals for the District of Columbia Circuit in *United States v. Ridley,* 134 U.S.App.D.C. 79, 412 F.2d 1126 (1969) (per curiam), and had been approved of by that court in *United States v. Caldwell,* 178 U.S. App.D.C. 20, 32 n. 42, 543 F.2d 1333, 1345 n. 42, *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), and *United States v. Bryant,* 153 U.S.App.D.C. 72, 76–77, 471 F.2d 1040, 1044–45 (1972), *cert. denied,* 409

---

1. *See, e.g., Welch v. United States,* 466 A.2d 829 (D.C.1983), in which *Robinson* was distinguished on the basis that appellant there had failed to request that he be present during the portions of the voir dire that took place in his absence or to object to his exclusion therefrom, and thus waived his rights in that regard.

U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973). In those cases the District of Columbia Circuit was considering not the issue of the defendant's right to participate in the bench examination, but the effect of the procedure on prospective jurors.

While the question of retroactive application was neither presented to nor passed upon by this court in *Robinson*, it is entirely clear to us that *Robinson* represented "a clear break with the past," *Desist, supra,* 394 U.S. at 248, 89 S.Ct. at 1032, and "disrupt[ed] a practice long accepted and widely relied upon," *Johnson, supra,* 457 U.S. at 552, 102 S.Ct. at 2588.[2] We are entirely unpersuaded by appellant's argument that the foregoing retroactivity analysis does not apply for the reason that *Robinson* did no more than apply "settled precedents to [a] new and different factual situation." *Johnson, supra,* 457 U.S. at 549, 102 S.Ct. at 2587.[3]

From the foregoing it is clear that even if we had announced in *Robinson* a new constitutional rule as opposed to a mere interpretation of a rule of procedure, retroactive application would be inappropriate. Since we are dealing with rule interpretation, the argument for retroactivity is weaker. Instructive in this regard is the recent decision of the District of Columbia Circuit in *United States v. Washington,* 705 F.2d 489 (D.C.Cir.1983) (per curiam). There, under circumstances similar to those present here, the Circuit Court of Appeals ruled that, upon request, defendant should be allowed to observe and hear jury responses made at the bench. *Id.,* at 505.

In ruling that its holding should be given only prospective effect, the court took cognizance of the fact that it was construing a rule, albeit one with constitutional underpinnings. In holding that it was error to exclude the defendant from jury voir dire bench conferences, the *Washington* Court stated:

> The constitutionally mandated minimum protection a defendant is entitled to under rule 43(a) is fundamental fairness. This minimum of fairness was certainly met in this case, since peremptory challenges are statutory, not constitutional, in origin. We stress this only to amplify that *our holding is based on rule 43(a), not directly on the Sixth Amendment confrontation clause or the due process guarantee of the Constitution.* In light of these underlying concerns and the fact that the practice of the trial court in this case stemmed from our suggestion in *United States v. Ridley,* 412 F.2d 1126, 1128 (D.C.Cir.1969), our holding in this case shall operate prospectively from the date of this opinion.

*Id.,* at 498 n. 5 (emphasis supplied; citations omitted). We agree with the analysis of the Circuit Court of Appeals in this respect.

We are unpersuaded by appellant's other assertions of error.[4] Therefore, his conviction is

*Affirmed.*

---

**2.** The fact that on some occasions the procedure mandated by *Robinson* was employed in Superior Court prior to issuance of the opinion does not negate the existence of the general practice.

**3.** This result is entirely consistent with our holding in *Mendes v. Johnson,* 389 A.2d 781 (D.C.1978) (en banc). There, in the context of a civil case, we identified four factors which bear upon resolution of the question of the manner in which a newly-recognized rule of law should be applied. Only two of these factors are applicable in the context of this criminal case. They are 1) the extent of the reliance of the parties on the old rule, and 2) the burdening of the administration of justice if retroactive effect is given. *Id.* at 789. In view of the extent to which the previous practice was relied upon by both the government and the trial court and the large number of cases in which it was employed, it is clear that these two factors weigh heavily against giving retroactive effect. The same result is achieved by application of the similar three-factor test utilized in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See* discussion of the *Stovall* standard in *Johnson, supra,* 457 U.S. at 543–45, 102 S.Ct. at 2584–91.

**4.** Appellant contends that the trial court erred in not approving his request for a transcript of his sentencing proceedings. The trial court's action in this regard conformed to our holding in *Gaskins v. United States,* 265 A.2d 589, 592–93 (D.C.1970). Appellant also argues that there was insufficient evidence of his intent to

commit petit larceny. A review of the record shows that there was ample evidence of record to warrant submission of that issue to the jury. Appellant asserts that he was prosecuted in violation of an agreement not to prosecute. However, the record is clear that the prosecutor made no such agreement. Nor was the service of a second notice of enhanced penalties prior to appellant's second trial indicative of prosecutorial vindictiveness, as argued by appellant. Finally, we view as without merit appellant's claim of denial of the right to speedy trial by reason of the 6-month period that elapsed between his first and second trials.