**Scotty WILLIAMS, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 81–928, 81–929.

District of Columbia Court of Appeals.

Argued Jan. 26, 1983.

Decided Dec. 6, 1983.

Rehearing En Banc Granted and Opinion Vacated April 2, 1984.

---

Sebastian K.D. Graber, Alexandria, Va., appointed by this court, for appellant.

Katherine Winfree, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., at time brief was filed, and John R. Fisher, Asst. U.S. Atty., Washington, D.C., at time brief was filed, were on brief, for appellee.

Before MACK and FERREN, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

Appellant pleaded guilty on February 5, 1980 to charges of rape and first degree burglary, D.C.Code §§ 22–2801, –1801 (1973), respectively.[1] The trial court ordered a study under the Federal Youth

---

1. Recodified as D.C.Code §§ 22–2801, –1801 (1981).

Corrections Act, 18 U.S.C. § 5010(e) (1976), and continued the case for sentencing. On July 7, the trial court imposed consecutive sentences totaling fifteen to forty-five years. In early September 1980, appellant contacted the Public Defender Service (PDS) and requested that a PDS lawyer file a motion to reduce sentence. Super.Ct. Crim.R. 35.[2] PDS agreed to represent him and filed the motion on November 3, 1980, 119 days after the trial court had imposed sentence.

On May 14, 1981, this court issued its opinion in *United States v. Nunzio,* 430 A.2d 1372 (D.C.1981), holding that the 120-day limit specified in Rule 35 (note 2 *supra*) was not a filing deadline but a jurisdictional limit on the trial court's power to rule. On July 2, 1981, the trial court denied appellant's Rule 35 motion, citing *Nunzio* for the proposition that the court "lack[ed] jurisdiction to modify the sentence because more than 120 days [had] elapsed since imposition of sentence on July 7, 1980."

Appellant contends that: (1) his PDS attorney rendered ineffective assistance of counsel by filing the Rule 35 motion on the 119th day after sentencing; (2) he was denied his due process right to have the trial court consider the Rule 35 motion; and (3) he was deprived of equal protection of the laws by virtue of his indigency. In reversing, we address only the first two arguments.

## I. Ineffective Assistance of Counsel

In *United States v. Hamid,* 461 A.2d 1043 (D.C.1983), this court reversed a trial court holding that retained counsel rendered "per se ineffective" assistance by filing a Rule 35 motion on the 118th day after sentencing. We held that the trial court's inquiry into

counsel's alleged ineffectiveness was "legally irrelevant," *id.,* at 1045, in light of the Supreme Court's decision in *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (per curiam).

In *Torna,* a criminal defense lawyer had filed his client's petition for certiorari in the Florida Supreme Court one day late, and the client alleged ineffective assistance of counsel. The United States Supreme Court held that, because there was no constitutional right to counsel in pursuing state discretionary appeals, *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), there could be no constitutionally deficient assistance of counsel. *Torna, supra,* 455 U.S. at 587–88, 102 S.Ct. at 1301–02. By analogy, this court held in *Hamid, supra,* that because there was no statutory or constitutional right to counsel for a Rule 35 motion, *Burrell v. United States,* 332 A.2d 344 (D.C.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975),[3] there could be no constitutionally ineffective assistance. Appellant's Sixth Amendment claim is identical to the claim rejected in *Hamid* and accordingly must fail here.

## II. Due Process

Appellant's Fifth Amendment due process argument proceeds as follows: There is a due process right to have the trial court consider a Rule 35 motion, and appellant was deprived of that right either (a) because his government-supplied lawyer filed the motion late, or (b) because the trial court erred in applying *Nunzio* retroactively to appellant's pre-*Nunzio* motion.

### A.

As a threshold matter, we agree that:

**2.** Super.Ct.Crim.R. 35(b) REDUCTION OF SENTENCE provides in part:

The Court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or

having the effect of upholding, a judgment of conviction. . . .

**3.** In *Burrell,* we held that there was no blanket right to the assistance of counsel in filing a Rule 35 motion, but we left open the possibility that due process may require the appointment of a lawyer under certain circumstances. *Hamid* foreclosed that possibility.

Appellant had a due process right to have the trial court consider his Rule 35 motion. *See Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 467 [101 S.Ct. 2460, 2465, 69 L.Ed.2d 158] (1981) (state system of discretionary parole "conferred no rights on [prisoners] beyond the right to seek commutation"). Moreover, in giving appellant the right to seek a reduction of sentence, the state gave more than a right to file a piece of paper; it granted an opportunity to present the motion " 'at a meaningful time and in a meaningful manner.' " *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 [102 S.Ct. 1148, 71 L.Ed.2d 265] (1982) (quoting *Armstrong v. Manzo,* 380 U.S. 545 [85 S.Ct. 1187, 14 L.Ed.2d 62] (1965)). *United States v. Hamilton,* 465 A.2d 843, 844 (D.C.1983) (per curiam) (Ferren, J., dissenting).

■■■ The trial court need not provide a defendant with counsel, *Hamid, supra,* 461 A.2d at 1044, or in every case afford a hearing, since the court typically will have heard evidence in mitigation at the original sentencing and thus the risk of an uninformed ruling will be slight. *Id.* at 1046 (Ferren, J., dissenting in part and concurring in the judgment only). A defendant, however, will not receive an opportunity to present the motion in a "meaningful manner," *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 1158–59, 71 L.Ed.2d 265 (1982), unless that defendant at least can receive a ruling on a timely filed motion. The trial court's discretion to decide is not discretion to ignore; the court must affirmatively exercise the discretion the law affords. *See Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (even though sentencing under Federal Youth Corrections Act is discretionary, and the trial court need not

explain its decision, the failure to exercise discretion with explicit finding as to whether eligible youth would benefit from FYCA treatment is reversible error); *Brooks v. United States,* 458 A.2d 66 (D.C.1983) (where trial court was unable to rule during probation period on motion for early discharge and set aside under Federal Youth Corrections Act, the "spirit of the Youth Act" required remand so that trial court would have an affirmative opportunity to exercise discretion.) [4]

### B.

Thus, we turn to appellant's argument that his counsel's late filing violated due process by depriving him of his right to a ruling on a timely filed Rule 35 motion. In *Torna, supra,* petitioner argued that the Florida Supreme Court had deprived him of due process by declining to review his certiorari petition, filed late by retained counsel. The Supreme Court dismissed the claim on state action grounds:

> Respondent was not denied due process of law by the fact that counsel deprived him of his right to petition the Florida Supreme Court for review. Such deprivation—if even implicating a due process interest—was caused by his counsel, and not by the State. Certainly, the actions of the Florida Supreme Court in dismissing an application for review that was not filed timely did not deprive respondent of due process of law.

455 U.S. at 588 n. 4, 102 S.Ct. at 1301 n. 4. Appellant argues that his claim is distinguishable because he was represented by a government-supplied PDS lawyer instead of by retained counsel. Thus, according to appellant, the deprivation caused by coun-

---

**4.** A criminal defendant's hope for reduction of sentence is not a liberty interest sufficient, as a matter of due process, to permit this court to review the trial court's exercise of discretion on the merits of a Rule 35 motion. *Walden v. United States,* 366 A.2d 1075, 1078 (D.C.1976); see *Dumschat, supra,* 452 U.S. at 467, 101 S.Ct. at 2465. However, Super.Ct.Crim.R. 35 does

create a legitimate expectation that the court will rule on a timely filed motion—an expectation that reflects a liberty interest at least entitling a defendant, as a matter of due process, to appellate court enforcement of the trial court's duty to exercise its discretion under Rule 35. *See id.*

sel's late filing was state action, and his claim, accordingly, survives *Torna.*

■ We reject this analysis. In *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court held that "conduct satisfying the state action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law [42 U.S.C. § 1983]." *Id.* 102 S.Ct. at 2753 n. 18. In *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) the Court held that a public defender does not act "under color of state law," 42 U.S.C. § 1983, in representing a criminal defendant. If conduct satisfying the state action requirement necessarily satisfies the under-color-of-state-law requirement, *Lugar, supra,* and if the conduct involved here (representing an indigent defendant) does not satisfy the under-color-of-state-law requirement, *Polk County, supra,* then it follows logically that the conduct involved here cannot satisfy the state action requirement.

### C.

Appellant argues, alternatively, that, given standard Superior Court practice, his Rule 35 motion was timely filed, and thus the trial court's retroactive application of *Nunzio, supra,* violated his due process right to a ruling.

■ As a rule, due process neither requires nor forbids giving retroactive effect to the decisions of an appellate court. *Linkletter v. Walker,* 381 U.S. 618, 628–29, 85 S.Ct. 1731, 1737–38, 14 L.Ed.2d 601 (1965); *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364–65, 53 S.Ct. 145, 148–49, 77 L.Ed. 360 (1932). The Supreme Court, however, has recognized a due process limitation on a state court's ability to apply retroactively a case overturning precedent that defined the procedure a party followed in asserting his or her rights. In *Brinkerhoff-Faris Co. v. Hill,* 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930), a taxpayer sued to enjoin collection of a tax that allegedly violated the Equal Protection

clause. State precedent had allowed similar suits. The Supreme Court of Missouri held that the taxpayer should have sought relief from the State Tax Commission and, having failed to do so, was barred by laches from proceeding in court. Six years earlier, the same court had held that the Tax Commission lacked the power to grant the relief sought; and, by the time the overruling decision came down, the time for proceeding to the Tax Commission had passed. The United States Supreme Court reversed, holding that the state had to provide the taxpayer with an opportunity to assert his claim on the merits:

> Our present concern is solely with the question whether the plaintiff has been accorded due process in the primary sense,—whether it has had an opportunity to present its case and be heard in its support. Undoubtedly, the state court had the power to construe the statute dealing with the State Tax Commission; and to reexamine and overrule the *Laclede* [*Land & Improvement Co. v. State Tax Commission,* 295 Mo. 298, 243 S.W. 887 (1922)] case. Neither of these matters raises a federal question; neither is subject to our review. But, while it is for the state courts to determine the adjective as well as the substantive law of the State,. they must, in so doing, accord the parties due process of law. Whether acting through its judiciary or through its legislature, a State may not deprive a person of all existing remedies for the enforcement of a right, which the State has no power to destroy, unless there is, or was, afforded to him some real opportunity to protect it.

281 U.S. at 681–82, 50 S.Ct. at 454 (footnotes omitted).

■ Since *Brinkerhoff-Faris,* the Supreme Court has made it clear that due process protects not only rights "which the State has no power to destroy," such as the taxpayer's equal protection claim, but also entitlements grounded in state law. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Gold-*

*berg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Moreover, once the state has conferred a right, the Constitution sets limits on the state's ability to define the procedures which must be afforded for its protection. *Logan, supra,* 455 U.S. at 432, 102 S.Ct. at 1155; *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980).

In *Logan, supra,* petitioner challenged the constitutionality of the Illinois Fair Employment Practices Act, which required the Illinois Fair Employment Commission to hold a factfinding hearing within 120 days of the timely filing of a discrimination complaint. Through inadvertence, the Commission had scheduled the hearing on petitioner's complaint after the 120 days had passed. The Illinois Supreme Court held that the 120-day limit in the state statute was jurisdictional, and thus the Commission lacked the power to consider the merits of petitioner's claim. The Supreme Court reversed on due process grounds and remanded for a hearing on the merits, noting that "[a] system or procedure that deprives persons of their claims in a random manner, . . . necessarily presents an unjustifiably high risk that meritorious claims will be terminated. . . ." 455 U.S. at 434–35, 102 S.Ct. at 1157.[5] The "system" under attack here is the retroactive application of *Nunzio* to all Rule 35 motions, filed within 120 days of sentencing, that were pending on the day *Nunzio* was issued. If retroactivity is allowed, then all motions, meritorious and frivolous, will be dismissed out of hand.

■ Broadly stated, *Brinkerhoff-Faris* and *Logan* stand for the proposition that the state cannot, consistent with due process, grant an adjudicative right and then, after a party fully complies with the procedures prescribed for asserting the right, dismiss the action because the party—without fault, and at the instance of the state itself—slips out of compliance with the state's procedural rules. The present case is not necessarily governed by *Brinkerhoff-Faris* and *Logan,* however, for there was nothing to prevent appellant from filing his Rule 35 motion early enough to assure a ruling before the 120 days had expired.

Nonetheless, it appears to have been standard Superior Court practice for lawyers to file Rule 35 motions toward the end of the 120-day period, and for judges to rule on these motions after the 120-day period had closed. *Hamid, supra,* 461 A.2d at 1047–48 & n. 8 (Ferren, J., dissenting in part and concurring in the judgment only).[6] *Nunzio, supra,* unquestionably represented a break with precedent in this jurisdiction. At the time appellant's counsel filed his Rule 35 motion, every federal court that had decided the question had construed the 120-day limit as a filing deadline.[7] Moreover, this court repeatedly had sanctioned this same construction.[8] Thus, for all prac-

---

**5.** Six justices also concluded that the state system violated the Equal Protection clause, finding no rational basis for the state's drawing a line between parties whose timely-filed claims were processed within 120 days and those whose claims were not.

**6.** The only published opinion squarely on point in this jurisdiction before *Nunzio* was *United States v. Rindgo,* 103 Wash.D.L.Rptr. 865 (D.C. Super.Ct. Apr. 4, 1975), in which the trial court held that the 120-day limit was a filing deadline, and that it retained jurisdiction over a timely filed motion after the 120 days had closed.

**7.** *United States v. Johnson,* 634 F.2d 94 (3rd Cir.1980); *United States v. Williams,* 573 F.2d 527 (8th Cir.1978) (per curiam); *United States v. Mendoza,* 581 F.2d 88, 90 (5th Cir.1978) (en banc) (per curiam); *United States v. Stollings,*

516 F.2d 1287 (4th Cir.1975); *Leyvas v. United States,* 371 F.2d 714 (9th Cir.1967). *See United States v. Hamid,* 461 A.2d 1043, 1048 (D.C. 1983) (Ferren, J., dissenting in part and concurring in the judgment only).

**8.** *See McDaniels v. United States,* 385 A.2d 180, 182 n. 3 (D.C.1978) (per curiam) (court noted without apparent disapproval that Rule 35 "frequently has been interpreted . . . to allow a court to act upon the motion beyond the 120-day period if the defendant filed the motion to reduce within the time period"); *Walden v. United States,* 366 A.2d 1075 (D.C.1976) (because of administrative error, Rule 35 motion not reached for consideration until more than two years after it had been filed; this court reviewed the trial court's determination on the merits). In *United States v. Goodrich,* No. 80–221, (D.C. May 20, 1980) this court denied,

tical purposes, appellant—encouraged by decisions of this court and the federal courts—found himself in the same position as the petitioner in *Brinkerhoff-Faris,* ousted from court by a newly-announced rule after he had reasonably relied on a different, generally followed and approved practice.

Rather than resolve the constitutional question, we find it more appropriate to use the due process gloss as background for an alternative analysis, based on this court's supervisory authority over the administration of justice. In criminal and civil cases, the Supreme Court "has accorded the lower federal and state courts wide latitude to employ such approaches as deemed appropriate in formulating responses to the retrospectivity-prospectivity problem." *Mendes v. Johnson,* 389 A.2d 781, 788 (D.C.App. 1978) (en banc). As guidance, the Court has stressed that lower courts should determine, first, whether the rule at issue does present a prospectivity question—whether there is, in fact, "a clear break with the past." *Desist v. United States,* 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969); *accord United States v. Johnson,* 457 U.S. 537, 549, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202 (1982); *Brodis v. United States,* 468 A.2d 1335 (D.C.App.1983). If not, retroactive application is usually called for. *See Johnson, supra,* 457 U.S. at 560, 102 S.Ct. at 2593. But if there is such a clear break, the courts may opt for prospectivity, *see id.,* depending on the history of the rule in question, the purpose of the change, the extent of reliance on the old rule, and the effect retrospective or prospective application will have on the administration of justice. *E.g., Chevron Oil v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971)

(civil); *Halliday v. United States,* 394 U.S. 831, 832, 89 S.Ct. 1498, 1498–99, 23 L.Ed.2d 16 (1969) (per curiam) (criminal); *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967) (criminal); *Linkletter, supra,* 381 U.S. at 629, 85 S.Ct. at 1737 (criminal).

In the context of a civil case, this court has drawn upon Supreme Court precedent, added other criteria, and adopted a four-factor test for evaluating whether a new rule of law should apply retroactively, or only prospectively. In *Mendes, supra,* we announced we will consider:

(1) the extent of the reliance of the parties on the old rule (including the degree of justifiable reliance and the hardship which might result to the litigants as a result of retrospective application); (2) avoidance of altering vested contract or property rights; (3) the desire to reward plaintiffs who seek to initiate just changes in the law; and (4) the fear of burdening the administration of justice by disturbing decisions reached under the over-ruled precedent.

389 A.2d at 789 (footnote omitted).

 Because *Nunzio, supra,* is a "clear break with the past," *Desist, supra,* 394 U.S. at 248, 89 S.Ct. at 1033; *Brodis, supra,* at 1337, we apply the four *Mendes* factors, properly tailored for a criminal case.[9] First, appellant's reliance on the pre-*Nunzio* understanding of Rule 35 is obvious. No competent lawyer would have waited until the 119th day after sentencing unless he or she had reason to believe the 120 days was a filing deadline, not a jurisdictional limitation on the trial court's power to act. Moreover, in light of the prevailing practice

---

without opinion, a petition for a writ of mandamus identical to that granted less than a year later in *Nunzio.* While an unpublished order of this sort has, of course, no precedential value, it ignores reality to treat the denial as having no bearing on the reasonableness of the bar's interpretation of Rule 35.

9. Recently, this court in *Brodis v. United States,* 468 A.2d 1335 (D.C. 1983), gave prospective effect to our decision in *Robinson v. United States,* 448 A.2d 853 (D.C.1982), which held that the trial court violated Super.Ct. Crim.R. 43(a) by conducting "[t]he bulk of voir dire (*i.e.,* that part consisting of conferences with individual prospective jurors regarding

their ability to render a fair and impartial verdict) ... at the bench while appellant, over protest, remained at counsel table." *Id.* at 856. In doing so we exercised our supervisory power over the administration of criminal justice, drawing on Supreme Court authority (primarily *Johnson, supra,* and *Desist, supra* ) and on the first and fourth *Mendes* factors. *Brodis, supra,* 468 A.2d at 1337 & n. 3. While we noted that, strictly speaking, "only two of these [*Mendes*] factors are applicable in the context of this criminal case," *id.* at 1337 n. 3, we conclude that in the present case the other two *Mendes* factors add useful perspective and accordingly we apply them.

in the trial court, we cannot say that appellant's reliance on the old rule was unreasonable. See notes 6–8, *supra.* The government, too, while urging retrospective application of *Nunzio,* has until recently treated the 120 days as a filing deadline. See *Hamid, supra,* 461 A.2d at 1047–48 (Ferren, J., dissenting in part and concurring in the judgment only). In short, given the defense counsel's, the government's, and the court's consistent reliance on the 120-day limit as a filing deadline, any retrospective application of *Nunzio* will "'disrupt[ ] a practice long accepted and widely relied upon.'" *Brodis, supra,* at 1337 (quoting *Johnson, supra,* 457 U.S. at 552, 102 S.Ct. at 2588) (footnote omitted).

Second, although appellant has no property or contract right at stake here, *Mendes, supra,* 389 A.2d at 790, he has a liberty interest in a trial court ruling on a timely filed motion, *supra* at 1338 & n. 4, that would be forfeited by retroactive application of *Nunzio.* This factor therefore militates in favor of nonretroactivity.

Third, the rationale for "rewarding" parties who successfully advocate a change in the law, by applying the change retroactively for their benefit, is that absent the possibility of such a "reward" a party will have no incentive to advocate change. The government, however, is an "institutional litigant." *Mendes, supra,* 389 A.2d at 791. It will gain the benefit of *Nunzio* in the Rule 35 motions filed thereafter.[10] An institutional litigant need not be rewarded for advocating change, since it "will continue to reap the benefits of a new rule of law in succeeding cases." *Mendes, supra,* 389 A.2d at 791.

Finally, a decision in favor of appellant (and of criminal defendants similarly situated) would not adversely affect the administration of justice. This is not a case which would require a large number of evidentiary hearings after the reopening of criminal cases years after the convictions, when memories had faded and evidence had been lost. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 300, 87 S.Ct. 1967, 1971, 18 L.Ed.2d 1199 (1967); *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 418–19, 86 S.Ct. 459, 466–67, 15 L.Ed.2d 453 (1966); *Linkletter, supra,* 381 U.S. 618, 637–38, 85 S.Ct. 1731, 1741–42. Here, the trial court will only have the burden of considering motions already docketed. The only convicted defendants affected by today's holding are those caught in the time squeeze of *Nunzio, i.e.,* the finite number of defendants who had filed Rule 35 motions in reliance on the previous interpretation of the rule shortly before *Nunzio* and were waiting for rulings at the time *Nunzio* was issued.[11] The government has not argued that this number is large. Thus, prospectivity would not burden the court system or prosecutorial interests.

Retroactivity, however, would substantially burden the finite, presumably small number of convicted defendants. In this situation, therefore, prospectivity is the better course. *See Niziolek v. Ashe,* 694 F.2d 282 (1st Cir.1982) (holding *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), requiring exhaustion of all state claims in federal habeas corpus petitions, nonretroactive where "the number of cases caught in the time warp is both finite and small"). The purpose of Rule 35 is to allow the trial court to consider, after further reflection, whether the sentence originally imposed was too harsh in light of the defendant's pretrial conduct. The purpose of the 120-day limit is to prevent the court from assuming the functions of a parole board by considering post-trial factors such as a favorable prison record and strong indications of rehabilitation. *Nunzio, supra,* 430 A.2d at 1375. If *Nunzio* were applied retroactively, the purpose of the 120-day limit would be served, but the purpose of the rule itself would be ignored. If

---

**10.** We are not aware of any convicted defendant who had been sentenced sometime before *Nunzio,* who had been planning to file motions in late May or early June of 1981 (relying on the prior interpretation of Rule 35), and who was caught by surprise when *Nunzio* was decided on May 14, 1981. A defendant who can show this kind of reliance, and who filed shortly after *Nunzio* and within the 120 days specified by Rule 35, will also get the benefits of today's holding.

**11.** Again, some defendants who filed shortly after *Nunzio* may be able to show reliance on the prior interpretation of Rule 35 and thus gain the benefit of today's holding. See note 10 *supra.*

*Nunzio* were applied prospectively, the purpose of the rule can be served without undermining the purpose of the limit, since the trial court may not wait an unreasonable period of time before ruling. *See* cases cited in note 7 *supra.*

## III.

In summary, *Nunzio* represents a clear break with precedent. Appellant's reliance on the prior interpretation of the 120-day limit in Rule 35 as a filing deadline and the reasonableness of that reliance weigh strongly in favor of prospectivity, as does the fact that appellant stands to lose a protected liberty interest if we apply *Nunzio* retroactively. Moreover, prospectivity will not adversely affect the administration of justice, since prosecutorial and court interests will not be burdened by the finite number of convicted defendants whose rights to Rule 35 rulings will be preserved. Finally, the other *Mendes* factor—desire to reward a litigant who advances the development of the law—does not militate strongly in favor of retroactivity. Nor has the government suggested any other factor that does so.

In taking this approach, we take basically the same approach the division of this court recently took in *Brodis, supra,* giving prospective effect to the *Robinson, supra,* decision interpreting another Superior Court criminal rule.

Accordingly, we hold that the trial court was not barred from ruling on the merits of appellant's Rule 35 motion; and, in view of our prospectivity ruling, we further hold that other convicted defendants who had filed Rule 35 motions within the prescribed 120 days either before *Nunzio,* or shortly after *Nunzio* having demonstrable reliance on the prior interpretation of the rule (see note 10 *supra* ), shall also receive the benefit of our decision here. We reverse and remand for further proceedings consistent with this opinion.

*So ordered.*

PAIR, Associate Judge, Retired, concurring in part and dissenting in part:

While I have no quarrel with the decision reached by my colleagues on the first two issues, I am unable to concur in their disposition of the third issue and would hold that the trial court did not err in its retroactive application of *United States v. Nunzio,* 430 A.2d 1372 (D.C.1981).

In *Nunzio,* decided in part upon the authority of *United States v. Addonizio,* 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979), this court declared in language crystal clear that the 120 day time prescribed by Super.Ct.Crim.R. 35(b) for filing and disposing of a motion to reduce a sentence is jurisdictional and may not be extended under any circumstances. *See also United States v. Pollack,* 655 F.2d 243, 246 (D.C.Cir.1980).

This court observed in *Nunzio, supra,* 430 A.2d at 1374 that:

We have long adhered to that view. *Brown v. United States,* 411 A.2d 631, 633 (D.C.1980); *McDaniels v. United States,* 385 A.2d 180, 182 (D.C.1978); *Franklin v. United States,* 293 A.2d 278 (D.C.1972).

Notwithstanding this imperative authority, my colleagues insist that *Nunzio, supra,* represents a break with legal precedent in this jurisdiction and that under the "old rule" it was standard practice to treat the 120-day time period as a filing deadline. Interestingly enough the only authority cited as support for this proposition is my colleague Ferren's dissenting opinion in *United States v. Hamid,* 461 A.2d 1043, 1047–48 (D.C.1983). Dissenting opinions, of course, do not declare the law authoritatively. The doctrine of *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971), mandates that we follow the declaration of the law as set forth in the majority opinions in *Nunzio* and *Hamid, supra.*

Whatever may have been the practice prior to *United States v. Nunzio, supra,* this court in that case declared the law respecting the Super.Ct.Crim.R. 35(b) 120-day time period. What must follow then is that our decision in *Nunzio* did not, as my colleagues insist, establish a new rule or principle of law but rather declared what the law has been since the inception of the rule. Due process did not, therefore, forbid retroactive application of the *Nunzio* doctrine.

The conclusion is thus compelled that the so-called "old rule" upon which the majority bases its prospective application of *United*

*States v. Nunzio, supra,* is a creature without legitimacy in our jurisprudence.

I respectfully dissent.

Before NEWMAN, Chief Judge, and KERN, NEBEKER, MACK, FERREN, PRYOR, BELSON, TERRY* and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

### ORDER

On consideration of appellee's petition for rehearing en banc and of appellant's reply thereto, and it appearing that the majority of the judges of this court has voted to grant the aforesaid petition, it is

ORDERED that appellee's petition for rehearing en banc is granted; this court's December 6, 1983, opinions and judgment are hereby vacated; the Clerk is directed to cause this case to be scheduled before the en banc court as promptly hereafter as business permits; and counsel are directed to provide ten additional copies of the briefs heretofore filed by Monday, April 16, 1984.